No. 97-142

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

C. HAYDON LIMITED and DR. K. M. CLEWS,

Plaintiffs and Respondents,

v.

MONTANA MINING PROPERTIES, INC., a Montana corporation;
ORO FINO PLACER MINING CORPORATION, a Montana corporation;
BLUEBIRD MINING CO., a Montana corporation; WEST BUTTE
METALS, INC., a Montana corporation; GOLDBRICK MINING CO.,
a Montana corporation; EAST RIDGE MINING CO., a Montana
corporation; SILVER BOW CONSOLIDATED CORP., a Montana
corporation; BLACK ROCK MINING CO., a Montana corporation;
YANKEE MINING CO., a Montana corporation; WABASH MINING CO.,
a Montana corporation; EUREKA MINING CO., a Montana corporation;
ORIGINAL BUTTE MINING CO., a Montana corporation;  MOUNTAIN
CON MINING CO., a Montana corporation; WESTERN AND PACIFIC
RESOURCES CORP., a British Columbia corporation; ALLAN FERGUSON;
S. DAVID ANFIELD; STEVEN A. SANDERS; RICHARD M. CAWOOD;
and JACOBS, PERSINGER & PARKER, a business association,

Defendants and Appellants.

v.

FRANK CROWLEY,

Plaintiff and Respondent.

APPEAL FROM:    District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Joan E. Cook, Attorney at Law, Great Falls, Montana

For Respondents:

David M. McLean; Knight, Dahood, McLean & Everett;
Anaconda, Montana (for C. Haydon Ltd. and Dr. K. M. Clews)

Greg J. Skakles and Patrick T. Gallagher, Skakles & Gallagher,
Anaconda, Montana (for Frank Crowley)

Submitted on Briefs: November 20, 1997

Decided: December 16, 1997
Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

K. Malcom Clews commenced this action in the District Court for the Second Judicial District in Silver Bow County to recover damages from the defendant, Montana Mining Properties Incorporated (MMPI), for breach of contract. MMPI filed a third-party complaint against Frank Crowley and William Murray for common law fraud, conspiracy, and breach of fiduciary duty. William Murray was dismissed by order of the District Court and Crowley filed a counter claim against MMPI. Following a jury trial, judgment was entered against MMPI on November 7, 1996. The jury verdict awarded Clews $298,275.33 for breach of a written agreement for his consulting services, and $8,268,851.78 for breach of MMPIþs promise to deliver stock. The jury verdict also awarded Crowley $2,000,000 for breach of MMPIþs promise to deliver stock. On November 18, 1996, MMPI filed a motion for new trial or in the alternative to alter or amend judgment. On January 10, 1997, the District Court denied MMPI's motion. MMPI filed its notice of appeal on February 7, 1997. We affirm the jury's verdict and the judgment of the District Court.

The issues on appeal are:

1. Did the District court err when it excluded evidence related to Clews' and Clive Smith's pending criminal charges of fraud and conspiracy?

2. Did the District Court err when it allowed testimony from another trial, regarding the agency relationship between Clive Smith and MMPI, as admissions against interest, and when it offered a jury instruction which characterized this testimony as a judicial admission?

3. Did the District Court err when it failed to give MMPI's jury instruction regarding subsequent contracts?

4. Was there sufficient evidence to support the jury's verdict?

5.    Did the District Court err when it denied MMPI's motion for a new trial?

FACTUAL BACKGROUND

Historically, the Anaconda Company owned a large block of mineral interests in Butte, Montana, which it sold to the Atlantic Richfield Company (ARCO).  ARCO subsequently disposed of all these mineral interests to Dennis Washington.  An option to acquire these mineral rights was given to two Australian men, Laith Reynolds and Kerry Harmanis.  Reynolds and Harmanis sought financial backing and entered into a joint venture agreement with named Clive Smith, a citizen of England, who became the financier of the joint venture.  The members of the joint venture decided to form a series of Montana corporations to provide ownership vehicles to which they could transfer various mining claims, equipment, etc.  One corporation, Montana Mining Properties, Incorporated (MMPI), was formed to act as agent for the other corporations.

On January 27, 1987, the members of the joint venture, Smith, Reynolds, and Harmanis,  acting through MMPI, signed a contract with Dennis Washington to buy mineral rights and properties, and to obtain certain other benefits.  Over the next two years, other Montana corporations were formed to provide ownership vehicles for various mining claims or equipment.  All of these corporations specifically authorized MMPI to act as their agent and to provide management.  That was the only reason for MMPI's corporate existence.

The joint venture consisting of Smith, Reynolds, and Harmanis owned and controlled all of the stock in the mining corporations through companies formed in the Jersey Isles called the "Limiteds," in proportion to their ownership percentages in the joint venture.  Although the percentages of ownership in the joint venture were in a constant state of flux between the three men and a new stock holder, Robertson Research Limited, Smith eventually  obtained the majority of the shares in the venture and absolute control over it and MMPI.

In an earlier lawsuit filed against MMPI by Dennis Washington, Smith indicated that he personally acted on behalf of MMPI on major matters; that he had procured all of the funding for MMPI acquisitions; and that he had personally caused $25 million to be expended in connection with the MMPI properties.  He also testified on behalf of MMPI that all assets of MMPI were beneficially owned by the members of the joint venture. While on the witness stand, evidence was presented through Smith's testimony and his attorney's statements to the court, that Smith owned 77.5 percent of MMPI, and was the controlling person in that company.

In 1986, prior to the formation of the MMPI joint venture, Reynolds contacted Frank Crowley to inquire about valuable mineral deposits in Butte. Crowley has intimate knowledge about the mines on the Butte Hill and, at the time, had a lease arrangement with ARCO.  As part of this lease arrangement, Crowley obtained a wealth of valuable geological and mining information which the Anaconda Company had accumulated over

a period of 100 years.  He referred to these records as the "golden records."  Crowley
informed Reynolds that the mineral deposit on the Butte Hill was extremely valuable and
very promising.  Reynolds and Harmanis continued to solicit information from Crowley,
who shared his opinions on the mineral deposits and the wealth of geological information
found in the "golden records."

Soon after, Reynolds and Harmanis purchased the property as part of the joint venture with Clive Smith.  During the entire process of negotiation with Dennis Washington, Crowley provided his advice and opinions at the request of Reynolds and Harmanis.  As a result of the purchase, MMPI owned, through the other twelve corporations, several mining blocks on the Butte Hill, along with a considerable amount of valuable mining equipment, including hoists, head frames, and compressors.  Smith, Reynolds, and Harmanis requested that Crowley  assist them with the management and development of the properties.  They orally promised Crowley that they would pay his fees, expenses, and give him a management position in the new company and a substantial block of stock.

Sometime after the purchase of the mining interests on the Butte Hill, a dispute arose between Reynolds, Harmanis, and Smith which eventually led Reynolds and Harmanis to relinquish their interest in the joint venture.  Smith then assumed the management and sole right to control and direct the MMPI operations.

During this time period, in April 1988, Smith, on behalf of MMPI, approached Malcom Clews and offered him employment with MMPI.  At the time, Clews was associated with Robertson Research, one of the four parties who held stock in MMPI.  Clews entered into an oral agreement to work for MMPI pursuant to Smith's request.  Initially he was to be paid a daily consulting fee, his out-of-pocket expenses, and was
promised an executive position in any public company formed upon MMPI's
þrealization,þ along with a block of stock in the public company.  Clews sent monthly invoices to MMPI in Butte, in accordance with the terms of this agreement.

In 1989, Clews and MMPI modified the oral agreement to require that Clews forgo his daily fee in return for a larger block of stock in the public company.  Clews gave a
credit against his monthly invoices for the daily fees charged from September 1988 to January 1989.  The remainder of the original agreement was unchanged.

In March 1990, Clews and MMPI made a second modification to the oral consulting agreement.  According to this modification, Smith, on behalf of MMPI, promised Clews a monthly consulting fee of œ5000 (pounds sterling).  The remainder of the original oral agreement was unchanged.

In May 1990, a potential realization on the American Stock Exchange looked promising for MMPI.  During that time, an attorney who worked for the joint venture reduced to writing the portions of Clews' and Crowley's oral consulting agreements which dealt with fees and expenses.  As a result, Crowley's general manager agreement,
which had previously been oral, was reduced to writing, as was Clews' consulting agreement.  The remaining portions of their oral agreements were unchanged.  After these agreements were reduced to writing, both Clews and Crowley were made officers and directors of the various corporations constituting MMPI, and were listed on the vendors' list as shareholders in the MMPI group of companies.

After several failed merger attempts, MMPI's realization finally occurred.  In

1991, a new company called Newco No. 393497 was specifically created to hold the assets and stock of the MMPI Butte mining corporations.  Clews and Crowley were listed on the schedule of stockholders of this numbered company.  This company was then merged with an existing British Columbian corporation called Nor Quest, which produced Western and Pacific Resources Corporation (k/n/a/ Synergy).  Western and Pacific Resources Corporation owns 87.5 percent of MMPI stock and is publicly traded on the Vancouver and NASDAQ stock exchanges.  The remaining 12.5 percent of stock was, and still is, held by Robertson Research Limited.  Western and Pacific Resources Corporation is, and has been since the time of the merger, a publicly held corporation with an independent Board of Directors duly elected by the thousands of members of the public who hold stock shares.

Clews and Crowley testified at trial that MMPI's oral promises of stock were not premised on being made subject to any pooling agreement, and neither the vendors list nor the subsequent schedule of stock holders in the numbered company indicated any pooling agreement restrictions.  Clews and Crowley testified that they performed their services and remained with MMPI as consideration for the unrestricted stock promises, fees, expenses, and positions as directors and executives of MMPI.

Following the execution of the written contracts with MMPI, Clews continued to send monthly invoices for his services to MMPI.  Many of the invoices were formally approved by Crowley in his role as general manager of MMPI and officer and director of the Montana corporations.  However, Clews has yet to be paid for a large portion of his services to MMPI.  His last bill to MMPI shows a cumulative total owing of œ107,275.04 for his consulting fees and expenses.  Additionally, after the realization occurred, Clews' and Crowley's requests for the stock they were promised were ignored, as were those of others.  To date, no stock has ever been delivered to Clews or Crowley.

## ISSUE 1

Did the District court err when it excluded evidence related to Clews' and Clive Smith's pending criminal charges for fraud and conspiracy?

We review discretionary trial court rulings to determine whether a district court has abused its discretion.  See May v. First Nat'l Pawn Brokers, Ltd. (1995), 270 Mont. 132, 134, 890 P.2d 386, 388.  In Montana Rail Link v. Byard (1993), 260 Mont. 331, 337, 860 P.2d 121, 125, we held that "[t]he standard of abuse of discretion is applied to discretionary rulings, such as trial administration issues, post-trial motions and similar rulings."  (Citing Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603-04.)  The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.  See Davis v. Davis (1996), 277 Mont. 188, 190,

921 P.2d 275, 277. We will not substitute our judgment for the District Court's unless it clearly abused its discretion. See Gaustad v. City of Columbus (1995), 272 Mont. 486, 488, 901 P.2d 565, 567.

According to MMPI, as set forth in its motion in limine, on May 26, 1995, the British Security Office in England arrested Clews and Smith and charged them with conspiring to defraud in connection with the sale of stock in Butte Mining PLC, a United Kingdom Company. MMPI claims that the charge alleged that the claimed value of the stock of Butte Mining PLC far exceeded the value of the company's assets. According to these facts, Clews and Smith currently await trial.

Prior to trial in this matter, the District Court granted Clews' motion in limine to exclude evidence of any pending charges in England for the reason that they are irrelevant to any issue in this case. MMPI maintains that these charges are relevant to Clews' credibility, as well as to the relationship between Clews and Smith. MMPI's theory is that any promises for shares of stock made by Smith to Clews were in his individual capacity, and not as an agent of MMPI. Thus, the nature of Clews' and Smith's joint venture and the fact they are facing criminal fraud charges together is relevant. MMPI contends that the evidence would show that Clews is not an innocent victim who was defrauded out of payment for services rendered, but rather that he is a savvy businessman who knew exactly the type of arrangement into which he entered. MMPI cites a number of criminal cases in support of its contention that, because Clews allegedly brought forth his credibility as an issue at trial, MMPI should have the opportunity to rebut that evidence with evidence of Clews' criminal activity.

Clews, on the other hand, contends, first, that his credibility and character were never an issue at trial, and second, that the criminal charges in England were only pending; there has been no conviction. Therefore, Clews argues that according to Article II, Section 17, of the Montana Constitution, and õõ 26-1-602 and 26-16-204, MCA, he should be presumed innocent until proven guilty. Clews maintains that an examination of Rules 401, 402, 403, 404, and 609, M.R.Evid., mandate that this type of evidence be excluded because the potential for prejudice far outweighs its probative value.

Clews also contends that MMPI did not give the notice required by Rule 404(b), M.R.Evid., and State. v. Just (1979), 184 Mont. 262, 602 P.2d 957, that other crimes or wrongful acts would be introduced for the purpose of proving motive, opportunity, preparation, plan, knowledge, or identity.

The District Court granted Clews' motion in limine and excluded evidence of the pending criminal charges on relevancy grounds pursuant to Rules 401 and 403, M.R.Evid. We agree with the District Court and disagree with MMPI's contention that it is necessary that these charges be admitted to demonstrate Clews' lack of character and credibility.

We also disagree that this evidence is necessary to demonstrate the type of

relationship between Clews and Smith. The fact that they are both facing fraud charges
is not probative of the relationships between the two men. In fact, unproven charges do
not prove anything.

Moreover, even if this evidence was relevant pursuant to Rule 401, M.R.Evid., we agree with the District Court that pursuant to Rule 403, M.R.Evid., its probative value is substantially outweighed by the danger of unfair prejudice. We therefore conclude that the District Court did not abuse its discretion when it granted Clews' motion in limine and excluded evidence of Clews' pending criminal charges.

ISSUE 2

Did the District Court err when it allowed testimony from another trial, regarding
the agency relationship between Clive Smith and MMPI, as admissions against interest, and when it offered a jury instruction which characterized this testimony as a judicial
admission?

On appeal, MMPI contends that the District Court erroneously held that MMPI was collaterally estopped from asserting that Smith did not bind MMPI with his promises
of stock to Clews and Crowley. It further contends that the District Court erred when
it offered as a jury instruction a statement made by the former attorney for MMPI which
establishes the agency relationship between MMPI and Smith, as a judicial admission which concedes the truth of the attorney's statement.

We will first address MMPI's claim that the District Court collaterally estopped it from rebutting the claim that Smith is an agent for MMPI. Our review of the record
gives no indication that the District Court ever made such a ruling. We conclude that
there was nothing done by the District Court to prevent MMPI from presenting evidence that Smith did not bind MMPI with promises of stock to Clews and Crowley.

On September 9, 1996, the District Court held a pretrial hearing to determine what
exhibits could be used at the trial without objection. MMPI objected to a series of exhibits that were offered by Clews and Crowley. These exhibits included previous rulings and court orders in another lawsuit involving MMPI, as well as certain decisions
arising from an MMPI lawsuit in England. Clews and Crowley had marked as exhibits portions of the transcript from those earlier hearings which described testimony given by
Clive Smith and statements made by the attorney for MMPI. Crowley moved that the exhibits be admitted pursuant to the doctrines of collateral estoppel, judicial estoppel, or
judicial notice. Clews moved that the exhibits be admitted because the statements were
admissions by a party-opponent. At the conclusion of the arguments, the District Court
indicated that the statements made by Smith and his attorney, in the other proceeding,
were admissions by a party-opponent and, for this reason, certain portions of the

transcript could be read into evidence.  The District Court made no ruling with regard to Crowley's argument that the statements should be admitted based on collateral estoppel, judicial estoppel, or judicial notice.  The District Court indicated that the transcript provisions were sufficient and that the decisions of the other courts could be left out of the trial.  The attorney for MMPI indicated that she would have no problem with the limited introduction of that testimony.   Nothing in the record suggests that the ruling made by the District Court in any way prevented MMPI from introducing evidence that Clive Smith did not bind MMPI with his promises to Clews and Crowley.

Rule 801(d)(2), M.R.Evid., governs admissions by a party-opponent.  That rule provides that a statement is an admission by a party-opponent and is not hearsay if: [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of that relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

We conclude that all of the elements contained within this rule of evidence are met in this case and that the earlier testimony of Smith and the attorney for MMPI are not hearsay.  The statements were offered against MMPI, and the statements regarding MMPI and Smith's agency relationship were made by MMPI's attorney and Smith himself.  Both Smith and his attorney, on the record, testified as to Smith's absolute ownership and control over MMPI.

With regard to the jury instruction which MMPI appeals, we conclude that the District Court did not commit reversible error by giving that instruction to the jury.  The instruction which MMPI appeals addresses the fact that the attorney for MMPI, in a prior action, stated that Smith was the owner of 77.5 percent of the stock in MMPI and, as such, was the person with ultimate control of the affairs of MMPI.  Although the District Court mischaracterized this statement as a judicial admission of fact, rather than as an admission by a party-opponent, that characterization, by itself, had no significance to the jury.  The court correctly instructed the jury that the statement is binding on MMPI and requires no further proof.  We conclude that the effect and intent of the instruction was the same as if  the instruction characterized the statement as an admission by a

party-
opponent, and that the mischaracterization of the statement was, at most, harmless
error.

Accordingly, we conclude that the District Court did not collaterally estop MMPI
from asserting that Smith did not bind MMPI with his promises of stock to Clews and
Crowley; that the District Court did not preclude MMPI from calling witnesses or
presenting exhibits to prove that the promises of Smith did not bind it; and that the
statements made by Smith and MMPI's former attorney are admissible pursuant to Rule
801(d)(2), M.R.Evid., as admissions by a party-opponent.  Moreover, we conclude it
was not reversible error for the District Court to mischaracterize these statements
as
judicial admissions, rather than as admissions by a party-opponent.

## ISSUE 3

Did the District Court err when it refused to give MMPI's jury instruction
regarding subsequent contracts?

We have held that "[i]t is not reversible error for a district court to refuse
an
offered instruction unless the refusal affects the substantial rights of the party
who
proposed the instruction."  Lacock v. 4Bþs Restaurants, Inc. (1996), 277 Mont. 17,
21,
919 P.2d 373, 375.

MMPI contends that the District Court committed reversible error when it refused
to  give the following instruction regarding the statutory language of õ 28-2-904,
MCA.

The execution of a contract in writing, whether the law requires it
to be written or not, supersedes all the oral negotiations or stipulations
concerning its matter which preceded or accompanied the execution of the
instrument.

The District Court indicated that MMPI could submit the instruction, but only of it
was
in writing.  MMPI did not do so prior to the completion of settling jury
instructions.

It is unclear whether the instruction regarding the statutory language of õ 28-
2-904,
MCA, was ever submitted by MMPI.  However, had MMPI submitted that instruction
and the District Court refused to give it to the jury, the District Court's refusal
would not
have been reversible error.  According to the facts of this case, each of the
contracts
between MMPI and Clews  were fully performed successive contracts.  In exchange for
his services, Clews was to receive stock in MMPI's public company, Western and
Pacific
Resources Corporation, a position as the director and executive of the company, and
fees
and reimbursement for his expenses.  The fees and expenses portion of the contract
was
later made into a written agreement, and the directors and officers of Western and
Pacific
Resources Corporation listed Clews as the director and chief executive of the

company.
Moreover, stock in Western and Pacific Resources Corporation was issued to Clews.

Because each successive contract varied from the previous contract, the contracts
may have appeared to be modifications of one another and, as MMPI contends, only
negotiations leading up to the final written contract. They were, however, separate
contracts that both parties executed and performed. The final written contract was not
intended to merge the previous contracts between the parties into one written agreement.
It related to only that portion of the parties' agreement which dealt with Clews' consulting
services and his fees and expenses.

In the case of Crowley, his written general manger contract incorporated entirely
the oral consulting agreement between the parties. The oral consulting agreement, as
referenced in the general manager contract, provided that in exchange for Crowley
providing management and knowledge of the Butte area claims, geology, and community,
as well as his assistance in bringing the MMPI project to fruition, Crowley was to receive
his fees, expenses, a substantial block of stock, and a director position. As such,
MMPI's appeal on this issue has no application to Crowley. Crowley's written general
manager contract fully incorporated any prior contracts between the parties.

Accordingly, we conclude that the District Court did not err by refusing to instruct
the jury regarding the statutory language of õ 28-2-904, MCA

ISSUE 4

Was there sufficient evidence to support the jury's verdict?

The standard of review of a jury's verdict is whether there is substantial credible
evidence in the record to support it. See Tanner v. Dream Island, Inc. (1996), 275
Mont. 414, 422, 913 P.2d 641, 646; Barthule v. Karman (1994), 268 Mont. 477, 485,
886 P.2d 971, 976. See also Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont.
320, 322-23, 820 P.2d 1285, 1287. In Baird v. Norwest Bank (1992), 255 Mont. 317,
323, 843 P.2d 327, 331, we held that

[s]ubstantial evidence is that evidence that a reasonable mind might accept
as adequate to support a conclusion; it consists of more than a mere
scintilla of evidence but may be somewhat less than a preponderance.
Although it may be based on weak and conflicting evidence, in order to rise
to the level of substantial evidence it must be greater than trifling or
frivolous.

(Citations omitted.) In Lackey v. Wilson (1983), 205 Mont. 476, 479, 668 P.2d 1051,
1053 we held that an attack upon a jury verdict as not supported by the evidence is proper
only when there is a complete absence of any credible evidence in support of the verdict.
All evidence and all inferences drawn therefrom must be considered in a light most
favorable to the adverse party.

MMPI contends that the jury verdict should be reversed for lack of substantial

evidence. It argues that there is not sufficient evidence for the jury to have found that
Smithþs promises of stock to Clews and Crowley, in exchange for their services, rose to
the level required to hold MMPI liable for these promises. Our review of the record, however, indicates that there was substantial evidence to establish that MMPI, through
its agent Smith, did in fact promise and issue unencumbered stock to Clews and Crowley.

The facts of this case demonstrate that Clews and Crowley were both issued stock in MMPI's public company, Western and Pacific Resources Corporation. The stock which they held in that company was based upon stock that Clews and Crowley held in Newco No. 393497. Clews and Crowley held stock in Newco No. 393497 because they were stockholders in MMPI. They owned stock in MMPI because Smith divided up his ownership interests in MMPI in the vendorþs lists prior to the formation of Newco No. 393497. All of these facts were presented to the jury and the jury agreed with Clews and
Crowley that Smith, on behalf of MMPI, promised them stock in the public company.

MMPI also appeals the jury's decision that the stock issued to Clews and Crowley was not subject to a pooling agreement of which Clive Smith was the majority shareholder. MMPI argues that the stock was issued to Clews and Crowley but that the pooling agreement, which contractually combined and controlled the stock of several shareholders of Western and Pacific Resources Corporation and prevented its members from freely selling their stock, had nothing to do with MMPI or their parent company Western and Pacific Resources Corporation. According to MMPI, Clews and Crowley entered into the pooling agreement with Smith alone and, therefore, MMPI cannot be held liable for the fact that Clews and Crowley cannot sell their pooled stock.

At trial, Clews and Crowley both maintained that they were not subject to the pooling agreement because they had never given their consent. MMPI claims that Clews and Crowley are bound by the pooling agreement because they acted as if they were bound by it when they unsuccessfully attempted to acquire their stock pursuant to the terms of the agreement. According to MMPI, because Clews and Crowley are bound by the pooling agreement made with Smith, MMPI cannot be held liable for Clews and Crowley's inability to sell their stock. We disagree.

Throughout the trial of this matter, Clews and Crowley exhaustively provided evidence that Smith was in control of MMPI and that he acted on behalf of MMPI as its agent. Through Smith, MMPI promised stock to Clews and Crowley which was not subject to any pooling restrictions. It was only after the stock was issued that the pooling
agreement appeared. Based upon this evidence, the jury determined that MMPI's oral promises of stock to Clews and Crowley were not subject to the pooling agreement. The
jury did not hold MMPI liable for the pooling agreement due to an agency relationship between Smith and MMPI, but rather that Clews' and Crowley's stock was not subject to the pooling agreement at all.

Accordingly, we conclude that there exists substantial credible evidence in the record to support the jury's verdict that MMPI failed to deliver Clews' and Crowley's stock as promised.

## ISSUE 5

Did the District Court err when it denied MMPI's motion for a new trial?

The standard of review of a district court's denial of a motion for a new trial

is
manifest abuse of discretion.  See Baxter v. Archie Cochrane Motors, Inc. (1995), 271 Mont. 286, 287-88, 895 P.2d 631, 632 ("[t]he decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing
of manifest abuse of that discretion").  See also Rasmussen v. State Comp. Mut. Ins. Fund (1995), 270 Mont. 492, 496, 893 P.2d 337, 339; Jim's Excavating Serv., Inc. v. HKM Assoc. (1994), 265 Mont. 494, 512, 878 P.2d 248, 259.

MMPI contends that the District Court should have granted a new trial because the
jury awarded excessive damages to Clews.  MMPI argues that the jury erroneously awarded consulting fees to Clews beginning in October 1988, more than a year prior to the effective date of the written consulting contract.  MMPI further contends that the jury
verdict erroneously awarded damages to Clews for services that were to be paid for in pounds sterling by converting those damages to United States' dollars on each monthly "payday" throughout the term of Clews' consulting agreement.  MMPI maintains that this
method of converting pounds sterling to dollars unfairly takes advantage of the historically high conversion rates which were in excess of those in effect on the day the
verdict was rendered.  According to MMPI, any damages awarded to Clews as a result of a breach of his consulting agreement with MMPI should have been awarded in pounds sterling and converted to dollars on the date the judgment was entered.

Clews, on the other hand, argues that the jury verdict was not in error and that the
damages were not excessive.  According to Clews, the first month that Clews billed for
any consulting fees was the month of October 1990.  The only charges for previous months were charges for out-of-pocket expenses incurred by Clews which were specifically authorized by his written agreement.  The written contract required MMPI to pay Clews a retainer of œ5,000 per month commencing February 1, 1990, until the expiration of the contract.  Clews contends that the undisputed facts at the trial demonstrated that Clews had been providing services to MMPI since September 1988 and, therefore, a bill for expenses from September 1988 through January 1992 was proper.  With regard to the conversion of the pounds sterling to dollars, Clews argues
that he was entitled to the jury's award which was computed on a month-by-month basis because this was a sum certain case.

We agree with Clews that the record demonstrates that he began providing services
to MMPI in September 1988 and, thus, the jury's award of expenses and fees from that date through January 1992 was proper. With regard to MMPI's allegation that the jury erroneously calculated the exchange rate from pounds sterling to U.S. dollars on a monthly basis instead of on the day the judgment was entered, we conclude that MMPI cannot raise this alleged error for the first time on appeal.  The record in this case
indicates that MMPI failed to make a timely or specific objection to the manner in which
the jury calculated the conversion rate for Clews' damages.  In State v. Huerta (Mont.
1997), St. Rep. 1139-40, 197 WL 687379, we held that where the appellant failed to

object at the time the court made the alleged error, the objection was not timely. See also State v. Hofman (1996), 275 Mont. 455, 913 P.2d 1256; City of Forsyth v. Allison (1995), 274 Mont. 246, 908 P.2d 205; State v. Walter (1994), 266 Mont. 429, 880 P.2d 1346; State v. Smith (1986), 220 Mont. 364, 715 P.2d 1301; State v. Close (1981), 191 Mont. 229, 623 P.2d 940.

In addition to requiring a timely objection, we have held that the objection must be specific in order to preserve the issue for appeal. In State v. Loh (1996), 275 Mont. 460, 479, 914 P.2d 592, 603-04, we held that a trial objection that is very general in nature and which does not specify what authority, rule, statute, or constitutional provision might be violated by the court's decision, is insufficient to preserve that issue on appeal. In State v. Weeks (1995), 270 Mont. 63, 85, 891 P.2d 477, 490-91, we further held that an objector has an obligation to make the basis and grounds for his or her objection clear to the court so that the district court is given an opportunity to correct itself and that broad, general objections do not suffice.

MMPI's only objection to the manner of calculating damages was a general objection to the foundation of several exhibits, one of which was the calculation sheet for Clews' damages which included the conversion tables used by the jury. MMPI's claim on appeal that the jury erroneously converted the exchange rate of Clews' damages each month, rather than on the day the judgment or payment was made, is an argument which it did not make to the District Court at the time the conversion tables were offered or admitted. We conclude that because MMPI's objection was not timely or specific, it did not preserve the issue for our consideration on appeal.

For these reasons, we affirm the jury's verdict and the judgment of the District Court.


/S/   TERRY N. TRIEWEILER


We Concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  WILLIAM E. HUNT, SR.