No. 97-071

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 306

DONALD JARVENPAA,

Plaintiff and Appellant,

v.

GLACIER ELECTRIC COOPERATIVE, INC.,

Defendant and Respondent.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Glacier,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jean E. Faure and Timothy B. Strauch; Church, Harris,

Johnson & Williams, P.C.; Great Falls, Montana

For Respondent:

Gary R. Christiansen; Warden, Christiansen, Johnson

& Berg, PLLP; Kalispell, Montana

Submitted on Briefs: February 26, 1998

Decided: December 10, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. Donald Jarvenpaa, an employee of Glacier Electric Cooperative, Inc., was offered the option of early retirement to avoid termination. Jarvenpaa chose to retire, accepted lump sum cash retirement benefits, then filed a wrongful discharge action against Glacier in the Ninth Judicial District Court, Glacier County. In response, Glacier filed a counterclaim to recover part of the retirement benefits Jarvenpaa received. The case was tried before a jury which returned a special verdict in Glacier's favor on both the wrongful discharge claim and the counterclaim, thus requiring Jarvenpaa to return $106,000 of his early retirement benefits, plus interest accrued. Judgment was entered on said verdict, and Jarvenpaa appeals. We affirm.**

**¶2. The dispositive issues on appeal are:**

**¶3. 1. Did the District Court err when it denied Jarvenpaa's motion for summary judgment on Glacier's counterclaim?**

**¶4. 2. Did the District Court err when it refused to bifurcate Glacier's counterclaim from Jarvenpaa's wrongful discharge claim?**

**¶5. 3. Did the District Court err when it limited Jarvenpaa's expert testimony and, in**

turn, refused Jarvenpaa's proposed jury instructions that pertained to Glacier's alleged personnel policy?

¶6. 4. Did the District Court err when it allowed Glacier to introduce post-discharge evidence to substantiate the reasons why it discharged Jarvenpaa?

## FACTUAL BACKGROUND

¶7. For approximately thirty years, Donald Jarvenpaa was employed with Glacier Electric Cooperative, Inc., in a variety of positions, including manager of operations. However, on September 29, 1992, Glacier informed Jarvenpaa that due to alleged performance problems it would terminate him effective December 31, 1992. Instead of firing Jarvenpaa, Glacier offered him an early retirement option. Glacier offered the early retirement option to four other employees; however, only Jarvenpaa had to retire or be fired. The total lump sum retirement package presented and accepted by Jarvenpaa was approximately $318,116. This sum included approximately $106,000 of early retirement benefits.

¶8. After Jarvenpaa accepted the early retirement benefits, he filed a wrongful discharge action against Glacier on November 3, 1993, in the Ninth Judicial District Court, Glacier County. Pursuant to § 39-2-904, MCA, Jarvenpaa alleged that Glacier terminated him without good cause and in violation of its own written personnel policy. He also alleged that Glacier's actions were malicious and in retaliation for reporting Glacier's violation of environmental standards, pursuant to § 39-2-905(2), MCA, which allows for punitive damages.

¶9. During the initial proceedings, Glacier filed a motion for summary judgment contending that Jarvenpaa should be precluded from pursuing a wrongful discharge claim since he agreed to retire. The District Court granted Glacier summary judgment and Jarvenpaa appealed. On July 11, 1995, we reversed the District Court's order granting summary judgment. This Court determined that Jarvenpaa had been constructively discharged since he did not voluntarily retire; therefore, he had a right to pursue his wrongful discharge action. *See Jarvenpaa v. Glacier Elec. Coop., Inc. (Jarvenpaa I)* (1995), 271 Mont. 477, 898 P.2d 690.

¶10. The issues now before us result from the District Court's rulings upon remand of Jarvenpaa's wrongful discharge action. After remand, the District Court allowed

Glacier to file a counterclaim to collect the additional $106,000 that Jarvenpaa received for his early retirement, plus interest. Jarvenpaa moved for summary judgment in his favor on the counterclaim, but the District Court denied his motion. When Jarvenpaa requested that the District Court bifurcate Glacier's counterclaim from his wrongful discharge action, the District Court allowed the counterclaim to proceed and, in turn, overruled attempts to exclude evidence of his early retirement election. In addition, the District Court admitted certain post-termination evidence which Glacier offered to substantiate its reasons for terminating Jarvenpaa. Finally, when Jarvenpaa attempted to introduce expert testimony to establish that Glacier violated its own written personnel policy, the District Court partially excluded such testimony. The District Court also refused Jarvenpaa's proposed jury instructions relating to the existence of a personnel policy.

¶11. On November 8, 1996, the jury returned a special verdict for Glacier. The jury decided that Jarvenpaa was not wrongfully discharged and awarded Glacier $130,069.26 on its counterclaim. Accordingly, the District Court entered judgment against Jarvenpaa on November 14, 1996. Jarvenpaa now appeals the District Court's rulings.

## STANDARD OF REVIEW

¶12. Our standard of review of a district court's denial of a motion for summary judgment is *de novo*. *See Stutzman v. Safeco Ins. Co.* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34. Our standard of review of a district court's discretionary rulings is abuse of discretion. *See May v. First Nat'l Pawn Brokers, Ltd.* (1995), 270 Mont. 132, 134, 890 P.2d 386, 388. In *Montana Rail Link v. Byard* (1993), 260 Mont. 331, 337, 860 P.2d 121, 125, we held that "[t]he standard of abuse of discretion is applied to discretionary rulings, such as trial administration issues, post-trial motions and similar rulings." In *Malta Public School District A and 14 v. Montana Seventeenth Judicial District Court* (1997), 283 Mont. 46, 50, 938 P.2d 1335, 1338, we stated that under Rule 42(b), M.R.Civ.P., the decision as to whether to bifurcate a trial is a matter left to the "broad discretion" of the district court. In *State v. Romero* (1996), 279 Mont. 58, 73, 926 P.2d 717, 726-27, and many cases thereafter, we stated that we review a district court's ruling on the admission of evidence for an abuse of discretion. In *Cechovic v. Hardin & Associates* (1995), 273 Mont. 104, 116, 902 P.2d 520, 527, and cases thereafter, we applied the abuse of discretion standard to a trial court's selection of jury instructions.

¶13. The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *See C. Haydon Ltd. v. Montana Mining Properties, Inc.* (1997), 286 Mont. 138, 146, 951 P.2d 46, 51. We will not substitute our judgment for the district court's unless it clearly abused its discretion. *See C. Haydon Ltd.*, 286 Mont. at 146, 951 P.2d at 51.

ISSUE 1

¶14. Did the District Court err when it denied Jarvenpaa's motion for summary judgment on Glacier's counterclaim?

¶15. Glacier contends that since Jarvenpaa maintains that he was discharged, he did not effectively retire and, therefore, should not be entitled to keep the early retirement benefits he received. Glacier argues that Jarvenpaa cannot elect to both retire and be fired. Applying a contract theory, Glacier further argues that since Jarvenpaa failed to fully perform his retirement, he breached his retirement agreement and should be compelled to pay back the early retirement benefits he received from this agreement.

¶16. Jarvenpaa argues that he is entitled to summary judgment on Glacier's counterclaim because his wrongful discharge action should not affect his retirement agreement. He contends that his retirement was complete the day he voluntarily stopped working for Glacier. Additionally, he argues that since Glacier did not bargain for a release of potential claims in the retirement agreement, which Glacier itself drafted, Glacier should not be granted the net effect of a release by being allowed to pursue its counterclaim.

¶17. To address these arguments, we must first return to our discussion in *Jarvenpaa I*. We determined in *Jarvenpaa I* that Jarvenpaa was constructively discharged, despite his agreement to retire. Now, we are asked whether, by prosecuting his wrongful discharge claim, Jarvenpaa must return a portion of his retirement benefits which represents the early retirement part of his lump sum retirement package.

¶18. In the case *sub judice*, it is clear that Jarvenpaa's retirement agreement was made as part of an ultimatum to either retire or be fired. Glacier caused Jarvenpaa to elect one or the other. Jarvenpaa could not elect both; hence, he could not elect to

receive the benefits of both. He could either take an additional $106,000 in early retirement benefits, or he would be terminated. Jarvenpaa took the money, then claimed he did not retire but instead was constructively discharged. We agreed in *Jarvenpaa I* that the forced retirement was, in fact, a constructive discharge. However, Jarvenpaa cannot at the same time both retire and be discharged. We hold that while Jarvenpaa had the right to pursue the constructive discharge as wrongful, he cannot now keep the early retirement benefits after a jury determined that his discharge was not wrongful.

¶19. Jarvenpaa analogizes his case to cases involving employees' retention of severance benefits in actions brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621-623 (1996), and similar federal statutes. *See, e.g., Raczak v. Ameritech Corp.* (6th Cir. 1997), 103 F.3d 1257, *cert. denied* (1998), 118 S. Ct. 1033, 140 L. Ed. 2d 101; *Long v. Sears, Roebuck & Co.* (3d Cir. 1997), 105 F.3d 1529, *cert. denied* (1998), 118 S. Ct. 1033, 140 L. Ed. 2d 100; *Oberg v. Allied Van Lines, Inc.* (7th Cir. 1993), 11 F.3d 679, *cert. denied* (1994), 511 U.S. 1008, 114 S. Ct. 2104, 128 L. Ed. 2d 665; *Forbus v. Sears, Roebuck & Co.* (11th Cir. 1992), 958 F.2d 1036, *cert. denied* (1992), 506 U.S. 955, 113 S. Ct. 412, 121 L. Ed. 2d 336. In these cases, each employee who elected to take a severance package signed a release of potential claims, but then filed a discharge action and was allowed to retain the severance packages while pursuing the litigation. Each employer unsuccessfully argued that the employee ratified the release by retaining the severance package and, therefore, should be forced to tender-back the severance package as a condition precedent to bringing the action. These cases, however, do not address Jarvenpaa's argument that he should be permitted to retain his early retirement benefits even after he was unsuccessful in his wrongful discharge case. We conclude that it is an entirely different concept to require a tender-back of paid benefits before an employee is allowed to file suit.

¶20. In *Jarvenpaa I*, we stated that "the amount of the retirement benefit which he received is relevant to the amount of damages due to Jarvenpaa if he succeeds in this lawsuit." *Jarvenpaa I*, 271 Mont. at 483, 898 P.2d at 694. Thus, we conclude that there are only two circumstances under which Jarvenpaa could keep his early retirement benefits: (1) if he, in fact, retired, which he did not do in this instance; or (2) if he was wrongfully discharged, then he could have applied his early retirement benefits as an offset against any wrongful discharge damages he was awarded. Neither of these scenarios occurred.

¶21. Based on this conclusion, we hold that the District Court did not err when it denied Jarvenpaa's motion for summary judgment on the counterclaim.

ISSUE 2

¶22. Did the District Court err when it refused to bifurcate Glacier's counterclaim from Jarvenpaa's wrongful discharge claim?

¶23. Jarvenpaa argues that even if the District Court correctly allowed Glacier's counterclaim, it should have bifurcated the counterclaim from his wrongful discharge action to avoid prejudice against him. According to Jarvenpaa, Glacier's counterclaim unnecessarily invited evidence of Jarvenpaa's election to retire and the retirement benefits he received. Jarvenpaa argues that not only did such evidence have no probative value to the issue of whether he was wrongfully discharged, it prejudicially persuaded the jury to find that his discharge was fair, and not wrongful. Jarvenpaa further contends that the parties' separate claims corresponded to separate events and, therefore, should not have been intermingled.

¶24. Despite Jarvenpaa's arguments, the District Court did not bifurcate the two claims and it admitted evidence of Jarvenpaa's retirement election. In its order, the District Court stated that evidence of Jarvenpaa's retirement had sufficient probative value in Jarvenpaa's wrongful discharge claim and, therefore, was not prejudicial. Hence, there was no reason to bifurcate Glacier's counterclaim from Jarvenpaa's wrongful discharge action.

¶25. We agree. Evidence of Jarvenpaa's retirement election was helpful to the jury to make a well-informed decision of whether Jarvenpaa was wrongfully discharged. It was important that the jury consider all the events relating to Jarvenpaa's discharge. Contrary to Jarvenpaa's contention that his discharge was a separate event from his retirement election, we conclude that they were part of a single event.

¶26. Furthermore, because Jarvenpaa alleged that, pursuant to § 39-2-905(2), MCA, Glacier acted with malice after he reported Glacier's violation of environmental standards, information about Jarvenpaa's retirement option was relevant. Information about the terms of Jarvenpaa's discharge could assist the jury to determine whether Glacier acted with malice when it discharged him.

¶27. Thus, we hold that the terms of Jarvenpaa's discharge, to retire or be fired, are relevant to Jarvenpaa's wrongful discharge action. Therefore, the District Court did not abuse its discretion when it admitted such evidence and when it refused to bifurcate Glacier's counterclaim from Jarvenpaa's wrongful discharge action.

## ISSUE 3

¶28. Did the District Court err when it limited Jarvenpaa's expert testimony and, in turn, refused Jarvenpaa's proposed jury instructions that pertained to Glacier's alleged personnel policy?

¶29. One of Jarvenpaa's goals at trial was to establish that Glacier had a written personnel policy. Once established, Jarvenpaa could then argue that Glacier violated said policy and, thereby, wrongfully discharged him pursuant to § 39-2-904(3), MCA. Jarvenpaa contends that Glacier's personnel policy comprised a selection of written materials it adopted from a management consultant whom Glacier hired. Jarvenpaa cites *Kearney v. KXLF Communications, Inc.* (1994), 263 Mont. 407, 869 P.2d 772, for support. In *Kearney*, we reversed a court's directed verdict for an employer in a wrongful discharge case and concluded that an employer's policy to conduct annual performance evaluations may be interpolated from several writings, including preprinted evaluation forms and a memo from a supervisor. *See Kearney*, 263 Mont. at 416-18, 869 P.2d at 777-78. Jarvenpaa argues that the materials Glacier received from its management consultant, which included supervisory assessment forms and a personnel development plan used to help managers and employees improve their performance, along with a letter written by Glacier's general manager that stated Glacier was getting the personnel development plan underway, could reasonably establish that Glacier had a personnel policy.

¶30. Jarvenpaa further maintains that the District Court should have allowed his expert witness, who was a professor of management and worked as a management consultant, to testify that these materials constituted a personnel policy within common management standards and that Glacier violated the policy. Jarvenpaa points out that the District Court allowed Glacier's management consultant and general manager to testify on this issue so it should have allowed his witness to offer testimony on the same issue.

¶31. In addition, Jarvenpaa proposed jury instructions to support his argument. One

of Jarvenpaa's instructions stated that a personnel policy could include policies adopted by the employer found in other writings, including memos, forms, and other documents. Another instruction suggested that Glacier's personnel policy required Glacier to apply progressive discipline measures to discharge Jarvenpaa. He contends that Glacier failed to do this.

¶32. The District Court limited the testimony of Jarvenpaa's expert witness and refused Jarvenpaa's proposed jury instructions. It is obvious that the District Court was not convinced that Glacier had actually adopted a written personnel policy. Concerned that it was the jury's proper role to decide whether Glacier had a written personnel policy, the District Court did not allow Jarvenpaa's expert witness to testify to its existence. Instead, the District Court limited Jarvenpaa's expert testimony to identify common management standards and discuss whether such standards were evident in the materials supplied by Glacier's management consultant. The District Court also allowed Jarvenpaa's expert witness to answer whether Glacier violated a personnel policy, assuming the materials established such a policy. The District Court concluded that there was a lack of foundation to allow Jarvenpaa's expert witness to testify to anything further. However, the District Court did instruct the jury that a wrongful discharge occurs when an employer violates the express provisions of its own written personnel policy.

¶33. Once again, our standard of review is whether the District Court abused its discretion. We cannot say that the District Court's ruling on this evidentiary issue was an abuse of discretion so as to cause reversible error. The District Court concluded that a proper foundation had not been established to allow Jarvenpaa's expert witness to testify on the issue of whether Glacier adopted a personnel policy. Although Glacier's management consultant and general manager were allowed to testify on this issue, their stature as agents of the defendant was certainly different than Jarvenpaa's expert. Glacier's agents had first-hand knowledge on matters relating to this issue and were properly allowed to testify. Furthermore, Jarvenpaa had adequate opportunity to cross-examine Glacier's witnesses.

¶34. Also, we determine that *Kearney* does not support Jarvenpaa's argument. In *Kearney*, we stated that it was the proper role of the jury, not a judge, to determine whether the employer adopted a personnel policy. *See Kearney*, 263 Mont. at 418, 869 P.2d at 778. Although an expert did testify in *Kearney*, we were not reviewing the propriety of such testimony. We did not consider the role of an expert witness, nor

did we say that materials used by an employer constitute a personnel policy as a matter of law.

¶35. Jarvenpaa cites other cases as support for his argument. *See, e.g., Mahan v. Farmers Union Central Exchange* (1989), 235 Mont. 410, 420, 768 P.2d 850, 857 (opinion testimony from an expert is permissible provided that foundation has been laid and the expert's specialized knowledge will assist the jury); *Flanigan v. Prudential Federal Savings & Loan Ass'n* (1986), 221 Mont. 419, 430, 720 P.2d 257, 263-64 (in permitting an expert witness to interpret employment policies, the trial court acted within its discretion); *Crenshaw v. Bozeman Deaconess Hospital* (1984), 213 Mont. 488, 502, 693 P.2d 487, 494 (testimony of employee's expert on personnel management is properly admitted in action arising out of employee's termination when the jury's experience does not extend to the employer's disciplinary guidelines, much less the ability to evaluate propriety of such guidelines, and the expert's perspective assists the jury in understanding the evidence). Again, these cases are not on point. Each of these cases involved situations in which an expert witness testified on an issue of whether a personnel policy was violated, not whether a personnel policy existed. In *Crenshaw*, and again in *Flanigan*, we stated that expert testimony should be allowed when it is "based on professional expertise and experience which the individual jury members were unlikely to possess." *Flanigan*, 221 Mont. at 430, 720 P.2d at 263 (quoting *Crenshaw*, 231 Mont. at 502, 693 P.2d at 494). Additionally, in *Mahan*, 235 Mont. at 420, 768 P.2d at 857, we stated that opinion testimony from expert witnesses is admissible provided that the proper foundation testimony is in the record. In Jarvenpaa's case, the precise issue was whether a written personnel policy was even in existence.

¶36. For these reasons, we hold that the District Court did not abuse its discretion when it limited Jarvenpaa's expert testimony and refused Jarvenpaa's proposed jury instructions. Given the latitude which the District Court gave Jarvenpaa in this area, and the instructions given to the jury, we conclude that Jarvenpaa was allowed to sufficiently present his theory on this issue and no reversible error occurred.

ISSUE 4

¶37. Did the District Court err when it allowed Glacier to introduce certain post-discharge evidence to substantiate the reasons why it discharged Jarvenpaa?

¶38. During the trial proceedings, Jarvenpaa argued, as he does now, that evidence that pertained to reasons why he was discharged should have been limited to what Glacier wrote in a November 2, 1992, letter to him, and to what occurred before Glacier wrote the letter. Jarvenpaa repeatedly objected to evidence of events that occurred after the letter, including testimony by Glacier's witnesses that morale among employees improved after Jarvenpaa retired, and that managers who followed in Jarvenpaa's position handled the workload better than Jarvenpaa. Jarvenpaa argues that such after-acquired evidence should not have been allowed in his wrongful discharge action.

¶39. In its discretion, however, the District Court admitted the testimony of Glacier's witnesses. The District Court believed that the testimony was relevant, in some circumstances, to substantiate the reasons Glacier gave for Jarvenpaa's discharge in its November 2, 1992, letter. Morale was specifically addressed in the letter, plus Jarvenpaa introduced post-November 2, 1992, evidence in hopes of establishing that morale was still bad, thus opening the door on the issue. The other evidence admitted directly related to the matters addressed in the November 2, 1992, letter.

¶40. We conclude the District Court did not abuse its discretion in admitting such testimony. In its letter, Glacier indicated that Jarvenpaa detrimentally affected the morale and the operations of the workplace, and that he had problems exercising his duties as a supervisor. The District Court determined that Glacier's proffered evidence was relevant and admissible because it tended to prove the truth of the allegations Glacier made in its letter and whether Jarvenpaa was terminated for good cause. Furthermore, Jarvenpaa contended the pre-termination morale was attributable to other causes. Therefore, post-termination morale was probative of both Glacier's cause for termination and Jarvenpaa's denial.

¶41. It is true that an employer should be limited to introducing only those reasons itemized in a discharge letter as the reasons justifying termination. *See, e.g., Galbreath v. Golden Sunlight Mines, Inc.* (1995), 270 Mont. 19, 23, 890 P.2d 382, 385 (any collateral reasons for the discharge suggested by the evidence, other than the sole reason stated in a discharge letter, is irrelevant and, therefore, inadmissible); *Flanigan,* 221 Mont. at 431, 720 P.2d at 264 (after-acquired evidence that is not known to the employer at the time of an employee termination is not admissible); *Swanson v. St. John's Lutheran Hospital* (1979), 182 Mont. 414, 422, 597 P.2d 702, 706 (evidence outside the scope of a letter which states the reasons for an employee

discharge is of questionable value and irrelevant). Unlike these cases, however, Glacier did not offer evidence to present collateral reasons for Jarvenpaa's discharge. Instead, it offered the evidence to substantiate the reasons it had already given in its November 2, 1992, letter.

¶42. The District Court has broad discretion to determine whether evidence is relevant and admissible. Absent a showing of abuse of discretion, we will not overturn the District Court's determination. Although we conclude that the District Court did not abuse its discretion in admitting such evidence, we further note that the jury was properly instructed by the District Court that it was to consider only reasons asserted by Glacier at the time of discharge.

¶43. We affirm.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

/S/ MIKE SALVAGNI

District Court Judge, sitting for Justice James C. Nelson