FILED

02/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0453

DA 21-0453

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 33

STATE OF MONTANA,

Plaintiff and Appellee,

v.

SCOTT KELLY WALSH,

Defendant and Appellant.

APPEAL FROM:     District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 20-269C
Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Jeff N. Wilson, Assistant Appellate
Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Bjorn Boyer, Assistant
Attorney General, Helena, Montana

Travis Ahner, Flathead County Attorney, Stacy Boman, Amy L. Kenison,
Deputy County Attorneys, Kalispell, Montana

Submitted on Briefs:  February 1, 2023

Decided:  February 28, 2023

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Scott Kelly Walsh appeals his conviction after jury trial in the Eleventh Judicial District, Flathead County, of Driving Under the Influence (DUI). He raises the following issues:

1. *Did the District Court violate Walsh's right of confrontation under the United States and Montana Constitutions by granting the State's motion to permit a witness to testify in real time by two-way videoconferencing?*

2. *Did the District Court err by sentencing Walsh to the Montana State Prison (MSP) and by requiring him to pay a $100 statutory surcharge?*

¶2 We conclude Walsh's right of confrontation was not violated, but that the District Court, as the State concedes, erred by sentencing Walsh to MSP and by requiring him to pay a $100 statutory surcharge. We reverse and remand for re-sentencing.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 On August 13, 2020, a concerned citizen called 911 to report that a vehicle was driving erratically on Highway 93 near Whitefish, Montana. The caller reported the vehicle was swerving, accelerating then quickly decelerating, and causing other vehicles to pull off the road. Sergeant Rob Veneman of the Whitefish Police Department responded to the call and located a car matching the caller's description near the reported location. Veneman approached the car, identified the driver as Scott Walsh, and asked him if he had been drinking. Walsh answered, "[o]bviously, quite a bit," and Veneman noted a strong odor of alcohol coming from Walsh's person, a watery look in his eyes, and slurred speech. When Walsh refused to perform a field sobriety test or a breathalyzer test, Veneman arrested him, obtained a warrant for a sample of Walsh's blood, and transported Walsh to the North

2

Valley Hospital. At the hospital, Lily Schroeder, RN, conducted a blood draw pursuant to the warrant, and the sample was sent to the Montana State Crime Lab for analysis.

¶4 Walsh was charged with felony DUI for a sixth offense and the District Court set the trial for January 2021. The week before trial, the State moved for a continuance, explaining Schroeder was out of the country and unavailable to testify. The District Court granted the continuance over defense counsel's objection, and reset the trial for April 2021. Walsh thereafter moved to dismiss the charge on speedy trial grounds, which the District Court denied. Two weeks before the April trial, the State moved to allow Schroeder to testify remotely via Zoom, explaining that Schroeder was "now residing in Greece." Walsh objected to the motion.

¶5 The District Court entered findings of fact, finding Schroeder's journey to testify would be "over 5800 miles each way and span nine time zones," noting she would spend over 30 hours on an airplane roundtrip, plus "significant time in airports during multiple layovers." The District Court found the Centers for Disease Control had advised that all travel to Greece should be avoided due to COVID-19, and the U.S. State Department had issued a Level 4: Do Not Travel advisory for Greece due to COVID-19. The U.S. Embassy in Greece had advised that all airline passengers from Greece to the United States ages two and older must provide a negative COVID-19 viral test taken within three days of travel. The District Court found that obtaining Schroeder's physical presence in the courtroom would not only create an extraordinary expense for the County, "but, more importantly, would create a tremendous burden on Schroeder," and render securing Schroeder's

3

presence "a substantial financial and logistical impracticality." The court concluded use of two-way conferencing for Schroeder was necessary to further the important public policy of favoring prosecution for crimes committed. The District Court thus granted the motion.

¶6     The trial occurred on April 28-29 of 2021, and the jury found Walsh guilty of DUI. The District Court sentenced Walsh to a five-year term at the MSP, and ordered Walsh pay a $100 statutory surcharge pursuant to § 46-18-236(1)(c), MCA.

## STANDARD OF REVIEW

¶7     This Court exercises plenary review of constitutional questions and applies de novo review to a district court's constitutional interpretation of the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution. *State v. Mercier*, 2021 MT 12, ¶ 11, 403 Mont. 34, 479 P.3d 967. Additionally, we review the legality of a criminal sentence de novo to determine whether the trial court adhered to the applicable sentencing statutes. *State v. Hinshaw*, 2018 MT 49, ¶ 7, 390 Mont. 372, 414 P.3d 271. We confine our review to "'determining whether the sentencing court had statutory authority to impose the sentence, whether the sentence falls within the parameters set by the applicable sentencing statutes, and whether the court adhered to the affirmative mandates of the applicable sentencing statutes.'" *Hinshaw*, ¶ 7 (quoting *State v. Rosling*, 2008 MT 62, ¶ 59, 342 Mont. 1, 180 P.3d 1102).

**DISCUSSION**

¶8     *1. Did the District Court violate Walsh's right of confrontation under the United States and Montana Constitutions by granting the State's motion to permit a witness to testify in real time by two-way videoconferencing?*

¶9     The Confrontation Clause of the Sixth Amendment of the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witness against him." U.S. Const. amend. VI. Similarly, the Montana Constitution provides that "[i]n criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face." Mont. Const. art. II, § 24. Following the United States Supreme Court, many state courts have analyzed witness presence under the Confrontation Clause, noting the protection of the confrontation right is, in part, guaranteed through a "face-to-face meeting with witnesses appearing before the trier of fact." *Mercier*, ¶ 16 (quoting *Maryland v. Craig*, 497 U.S. 836, 844, 110 S. Ct. 3157, 3162-63, 111 L. Ed. 2d 666 (1990) (citations omitted)).

¶10     However, the Supreme Court has recognized that physical face-to-face confrontation, while preferred, is not an absolute requirement, and has approved alternative witness participation in certain circumstances. *See Mercier*, ¶ 17. In *Craig*, the Supreme Court affirmed a Maryland state statute that permitted the use of a one-way video stream in order to protect the interests of a child who had been sexually assaulted, where the State had presented evidence the child would sustain anxiety and fear if required to physically appear before the defendant, and that the child's ability to testify would be compromised. The Supreme Court upheld the statute, noting the State had provided an important public

5

policy for use of technology to present the testimony. This holding became the two-prong *Craig* standard, under which, first, there must be a case-specific finding made by the trial court that "denial of physical face-to-face confrontation is necessary to further an important public policy." *Mercier*, ¶ 18. Secondly, the reliability of the testimony must be maintained by such hallmarks as the witness being placed under oath, testifying in the view of the jury, and being subject to cross-examination. *Craig*, at 846-47. Walsh did not raise a challenge under the second prong.[1]

¶11 Here, the District Court made substantive, detailed findings about the health and logistical challenges involved in attempting to bring Schroeder from Greece to testify at trial. The District Court found that Schroeder would have to travel over 11,000 miles and spend over 30 hours in flight time, not including the "significant time in airports" required for multiple layovers. While the traveling itself presented difficulties, the District Court also focused on health concerns, including official governmental advisories against such travel, as an important public policy justification for using technology to present Schroeder's testimony. Even assuming Schroeder could have successfully navigated the travel in accordance with the logistical restrictions and appeared in person at the trial—in contravention to official advisories—she could well have placed herself, the court, the other witnesses, and the defendant into a heightened risk of contracting COVID-19. We

---

[1] Despite advancement in communication technologies since the *Craig* decision in 1990, the Supreme Court has yet to provide further direction regarding its use for trials. *See Mercier*, ¶ 25.

conclude the District Court correctly determined that permitting Schroeder to appear by video was supported by appropriate public policy considerations.

¶12    *2. Did the District Court err by sentencing Walsh to MSP and by requiring him to pay a $100 statutory surcharge?*

¶13    Walsh was sentenced under the 2019 DUI statute, the version in effect at the time of his DUI charge. Under § 61-8-731(1), MCA (2019) (repealed 2021), a person charged with a fifth or subsequent DUI offense, where the person previously completed a residential alcohol treatment program, "shall be sentenced to the department of corrections for a term of not less than 13 months or more than 5 years. . . ." We thus agree with both parties that, under the plain language of the statute, Walsh should have been sentenced to the Department of Corrections for a minimum of 13 months or up to a maximum of 5 years, and not to MSP.

¶14    Further, pursuant to § 46-18-236(1)(c), MCA, the sentencing court is to assess a surcharge of $50 "for each misdemeanor and felony charge." As the State concedes, the District Court erred by assessing Walsh a surcharge of $100, and should be $50, which likewise must be corrected upon remand.

¶15    Walsh's conviction is affirmed. We reverse his sentence and remand for resentencing. The District Court may conduct such additional proceedings for resentencing as it deems necessary, in its discretion.

/S/ JIM RICE

7

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON