FILED

12/17/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0199

DA 22-0199

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 304

STATE OF MONTANA,

Plaintiff and Appellee,

v.

LAVODRICK TERELLE HOGUES,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC-2016-57
Honorable Donald L. Harris, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Tammy Hinderman, Appellate Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Mardell Ployhar, Daniel
Guzynski, Assistant Attorneys General, Helena, Montana

Scott D. Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs: January 31, 2024

Decided: December 17, 2024

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Lavodrick Terelle Hogues (Hogues) appeals his March 2022 judgment of conviction in the Montana Thirteenth Judicial District Court, Yellowstone County, on the offense of aggravated promotion of prostitution, a felony in violation of § 45-5-603, MCA. We address the following restated issues:

1. *Whether the District Court's summary grant of Hogues' motion to proceed pro se four days before trial was plain error?*

2. *Whether the District Court erroneously admitted prosecution witness testimony via remote two-way video conferencing?*

Affirmed in part, reversed in part, and remanded for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 In January 2016, the State charged Hogues by Information with the offense of felony aggravated prostitution by purposely or knowingly promoting the prostitution of Jane Doe, a then 17-year-old female. The charge was based on the following facts and circumstances alleged in the charging affidavit and as supplemented by the subsequent trial testimony of the investigating police officers.

¶3 In December 2015, a Montana Department of Criminal Investigation (DCI) agent discovered an internet website advertising the "adult escort" services of two young females in or about Billings, Montana. Acting in an undercover capacity, the DCI agent texted the listed phone number to confirm the availability of the women, services offered, and price for those services. On receipt of a responsive text regarding those details, the agent called the listed phone number and arranged with the woman who answered (later identified as

2

Phylicia Zubia) to meet at a downtown Billings hotel. When the agent called Zubia on arrival as directed, she directed him to meet her at the hotel entrance. He did so, and she then led him up to a hotel room. As he entered the room with Zubia, the agent saw a second, scantily-clad young female (Jane Doe) sitting on the bed waiting. An accompanying police officer, who had surreptitiously trailed behind, then entered the room behind the agent.

¶4     Upon identifying themselves as police, the officers questioned the young women and ascertained that Zubia was 21, but Jane Doe was only 17. The two had traveled together to Billings from New Mexico through several states, and had been performing sex acts for money at various locations along the way. The officers seized two cell phones and a laptop computer belonging to Zubia, along with various other items in the room. They then arrested Jane Doe on a New Mexico warrant, and left Zubia behind at the hotel. After seeing the same internet escort service ad re-posted the next day, the DCI agent returned and arrested Zubia for promotion of prostitution.

¶5     While in jail, Zubia made numerous recorded telephone and video calls. By comparison with data extracted from her cell phones and laptop, the DCI agent identified Hogues as the person who Zubia had been calling from jail. The agent identified Hogues by matching contact and call information from Zubia's cell phones with the numbers she dialed from jail, and her jail call voice and image recordings with recordings and images extracted from her cell phones and laptop. Those devices also documented Zubia's involvement in various MoneyGram wire transfers, including some in December

3

2015. Upon subpoenaing the pertinent MoneyGram transaction records, the agent discovered Zubia had transferred money to Hogues on several recent occasions. Based on Hogues' available arrest records and booking photo(s), the DCI agent also matched various words appearing in Hogues' body tattoos to words associated with contact names in Zubia's phones and laptop. The aggregate of the compiled information, *inter alia* including MoneyGram transfers between Zubia and Hogues and their shared-access debit cards, indicated to investigating officers that Hogues had been directing the prostitution of Jane Doe through Zubia.

¶6    Hogues was later arrested in New Mexico on a Montana warrant issued on the January 2016 charging Information in this case. In May 2016, upon extradition to Montana, Hogues appeared in custody for arraignment accompanied by a public defender. After pleading "not guilty," obtaining a case-specific public defender, and bailing out, Hogues obtained several trial continuances through counsel on corresponding waivers of his right to speedy trial. Hogues soon replaced his appointed public defender with retained private defense counsel, who then later withdrew just weeks before the then-scheduled April 2017 trial date. In the wake of the withdrawal of Hogues' private counsel, and in the absence of a request for a replacement public defender or any other indication that Hogues was preparing for the imminently upcoming trial, the State moved for revocation of Hogues' bail. The District Court issued an arrest warrant on the motion, but Hogues remained at large for almost three years until arrested on the Montana warrant in Oklahoma in February 2020. Upon his return to Montana in custody, three more public defenders

4

were successively assigned and later replaced due to various issues with Hogues, thus resulting in yet another uncontested trial continuance. In September 2020, a contract public defender (Kotter) was assigned as Hogues' fifth defense counsel of record, and his fourth public defender.

¶7 In November 2020, the State moved for leave of court to present Jane Doe's trial testimony remotely via two-way video conferencing. The asserted ground for the motion was that she:

> lives out of state and has an infant child, which would make travel burdensome, particularly in the midst of the [Covid] pandemic. . . . Defense Counsel . . . does not object.

The State made no assertion, much less a supported showing, that such remote testimony was necessary due to witness unavailability, or to avoid any particularized Covid-based health concern, only that the Covid pandemic was one of two causes that "would make [her] travel burdensome." Why defense counsel did not oppose the remote testimony motion on Hogues' behalf, and whether he consulted with Hogues regarding that decision, are not of record on appeal. The District Court summarily granted the unopposed motion.[1]

---

[1] In April 2017, the State also sought and obtained unopposed leave of court to present the remote trial testimony of a MoneyGram records custodian on the grounds that her testimony was "primarily foundational" and it would be "an unnecessary expense" to bring her from Minneapolis. In December 2020, the State again sought and obtained unopposed leave of court to present the anticipated trial testimony of a MoneyGram records custodian remotely via two-way video conferencing on the asserted ground that "MoneyGram is not providing in person testimony" due to "the [Covid] pandemic." The State did not ultimately offer any trial testimony from the MoneyGram records custodian, however. It instead offered previously subpoenaed MoneyGram transaction records, which the District Court admitted as M. R. Evid. 803(6) business records without objection.

¶8     In advance of the then-scheduled January 2021 trial date, Hogues obtained another uncontested trial continuance through counsel, and trial was reset for April 19, 2021. When his public defender (Kotter) inexplicably failed to appear at the subsequent status hearing on December 16, 2020, Hogues complained to the court that Kotter had been unresponsive to him, not spoken with him since November 25th, and he was thus concerned as to whether Kotter would be filing necessary pretrial motions on his behalf. Hogues explained that he was not "necessarily" trying to "get rid" of Kotter, but that he had recently filed a complaint against him with the Public Defender Commission. When Hogues later appeared in custody with Kotter for another status hearing on February 19, 2021, he again voiced his dissatisfaction with Kotter to the court.

¶9     At the next status hearing on March 16, 2021, Hogues again complained to the court about Kotter, and thus requested new appointed counsel. He told the court that he thought Kotter was a "good attorney," but that he was not "real good on communication," failed to interview important defense witnesses (i.e., Zubia and Jane Doe), failed to file a motion for leave for Hogues to travel out of state, and maybe did not have "enough time" for Hogues. Upon court inquiry, Kotter countered that he had been maintaining significant verbal and text communication with Hogues, and had indeed filed the requested out of state travel motion but that the court denied it. As to Zubia and Jane Doe, Kotter further explained that: (1) Zubia was wanted under a "nationwide" warrant and still "in the wind"; (2) prosecutors similarly did "not know where she [was]"; and (3) the State had already conceded that Jane Doe did not have any "direct contact" with Hogues and thus no

first-hand information about him.[2]  The District Court denied the request for new counsel, and expressed concern that Hogues' similar complaints regarding the multitude of lawyers successively assigned or retained as his counsel manifested an apparent tactical "pattern of delay."

¶10     On April 14, 2021, the case came on for a "final" pretrial conference in advance of the upcoming April 19, 2021, trial date five days later.  Kotter informed the District Court that, in the wake of Hogues' prior and ongoing dissatisfaction with his representation, and against Kotter's advice, Hogues now "wanted to fire" him and proceed pro se. The following colloquy then ensued:

> [Court]     So, Mr. Hogues, what's your thinking about representing yourself at this point in time?
>
> [Hogues]   Um, at this point it's—I mean, *I kind of want to do it* and *I've heard you advised people against it*, so it wasn't a thing that I was dead set on at first; but after . . . attempting to get Mr. Kotter to . . . dig up some additional evidence that's relevant to the case, . . . and he wouldn't [do] that, I just felt like *I would probably be better off on my own*, so that I could possibly dig up that additional evidence.
>
> [Court]     Well, you're assuming that the court's going to continue this case; and I am not going to continue this case.
>
> [Hogues]   I mean that wouldn't be my assumption . . . immediately, sir.

---

[2] The State ultimately did not present any trial testimony from Zubia.  After being separately charged for promotion of prostitution, Zubia pled guilty under a plea agreement and the court accordingly deferred imposition of sentence and placed her on "unsupervised probation."  In the plea agreement, the State agreed to the lenient sentencing recommendation in return for her cooperation as a state's witness against Hogues.  After returning to New Mexico, however, Zubia abruptly broke-off communication with the State after March 2017.  After the trial, however, she reappeared out of the blue and testified on Hogues' behalf at his February 2022 sentencing.

The District Court later reset the matter for a defense counsel status hearing for April 16, 2021, to consider the matter further. On April 16th, following the State's unopposed motion for a continuance on the asserted ground that the prosecution had lost contact with Jane Doe following the recent hospitalization of her child, the District Court reset the defense counsel status hearing for April 20, 2021, and then reset trial for June 14, 2021.

¶11 At the ensuing April 20th status hearing, the following colloquy occurred between the District Court and Hogues:

| [Court] | [A]t the [last] conference, you were asking to proceed pro se, that is, without counsel. Is that still your desire, sir? |
|---|---|
| [Hogues] | *. . . It wasn't necessarily to proceed pro se*, I just wanted to address the issues that I was having with my counsel at the time; and *if they couldn't be addressed*, that's what *I would want to go pro se*. |
| [Court] | Well, when you say, "address the issue," is there something you want the court to do? |
| [Hogues] | Well, . . . I mean I'd asked to . . . substitute counsel. |
| [Court] | . . . So are you making the same argument now as you did [in March]? . . . [Y]ou are asking to substitute counsel now? Is that correct? . . . I'm just asking you what relief you're asking the court for? . . . *Do you want me to remove Mr. Kotter* from your case *and appoint other counsel*; is that what you want me to do? |
| [Hogues] | . . . [*T*]*his is what I would like*, your Honor. . . . I would like for the case to proceed as is. If I go pro se, I was considering hiring an attorney and I would like that to still be available. |
| [Court] | If you wish to go pro se and if I grant that wish, *you can always hire counsel. However*, if you hire counsel, . . . *trial is set for June 14th*, . . . so whoever you hire is going to have to be ready to try the case [then]. *I am not going to continue that date*. |

8

[Hogues]     . . . I never intended to continue this trial or delay [it]. . . . If I presented the evidence to you, maybe it would delete the skepticism of my strategy to delay this whole time; and it hasn't been my strategy to delay, it has really been . . . *alleged[] violations of due process* [and] *my rights to confront a witness*.

[Court]     . . . What's important to me is basically the essence of what you want this court to do. So, if you want to proceed pro se, then there's an inquiry I have to make of you to determine whether or not I'm going to allow that. . . . If you don't want to proceed pro se but want to substitute counsel, there's another route I have to go.

[Hogues]     . . . Absolutely. Will I still be granted a time to present evidence . . . [or] maybe some motions[?]

[Court]     [A]s a pro se litigant . . . you have the right to bring motions to the court[,] . . . [a]nd I will rule. . . . What I want to assure you, is if you represent yourself, I'm going to proceed just as I would if you were represented by counsel; and that's the thing that you need to understand.

[Hogues]     Okay.

[Court]     You need to understand that *the rules of evidence and the rules of procedure apply to pro se litigants just as they apply to counsel*.

[Hogues]     . . . And in light of the fact that . . . *I don't have the knowledge*, I *would rather have a substitution of counsel*.

Upon further court inquiry, Hogues stated that his primary complaint was that Kotter had yet to interview Jane Doe.

¶12    Under a prophylactic order obtained pursuant to *In re Gillham*, 216 Mont. 279, 280-82, 704 P.2d 1019, 1020-21 (1985), Kotter acknowledged having scheduling difficulties resulting from Jane Doe's cessation of communication with the State, purportedly due to the recent hospitalization of her child. Kotter said that he had "every intention to interview her" before trial. He explained, however, that there was "only one"

9

relevant avenue of "inquiry" with Doe, but that he did not want to divulge trial strategy in court. Finding no basis upon which to conclude that Hogues was not receiving effective assistance of counsel, that an actual client-counsel conflict of interest existed, or that a complete breakdown in client-counsel communication had occurred, the District Court ultimately denied Hogues' request for new counsel. The court closed by commending Hogues for his choice *not* to proceed pro se, to wit:

> In terms of your comments about proceeding pro se, it sounds to me like you rethought that, and I want to congratulate you in rethinking that. I think *in this type of case it's extremely important that you have counsel*; and *I would really discourage you from proceeding pro se in a case like this* because I think that *it would not go very well for you in front of a jury*, simply because *you don't have the training as a lawyer*. It has nothing to do with background experience or intelligence; it just has to do with *there are certain skills and knowledge* that *trial lawyers have* to have *that you don't* get until not only you have gone to law school but you've practiced for some time, which [Kotter] has done.

The court later set another "final" pretrial conference for June 9, 2021, with pretrial jury voir dire to commence Friday, June 11th, in advance of the previously scheduled June 14th trial date.

¶13 On June 7, 2021, despite his earlier disavowal of proceeding pro se, Hogues filed a written motion, through Kotter, for leave to proceed pro se without counsel from that point on. The motion and incorporated brief elaborated that:

> [Hogues] desires to represent himself, *Pro Se*, in this matter, pre-trial as well as at trial, to be enabled and allowed to file his own motions and pre-trial motions in this matter (without counsel signing or approving any such motions and pleadings), and to otherwise direct, control, and command the legal and strategic and all other aspects of this case, pre-trial and at trial.

> The Defendant unequivocally communicated this desire to current counsel of record, along with a request that appointed counsel of record file no further motions, or anything else, despite counsel of record informing the Defendant of the motions that he intended to file in this matter. In short, the Defendant desires to fully direct, control, and command the litigation of this case and matter. It is anticipated that the Court will require current counsel of record to remain as stand by counsel during trial . . . [in accordance with] *State v. Bartlett*, 271 Mont. 429, 898 P.3d 98 (1995).

Later that day, the District Court issued a written order summarily granting the motion, but ordering Kotter to "remain as standby counsel."

¶14 Two days later, at the subsequent final pretrial conference on June 9, 2021, Hogues appeared pro se but with Kotter present as standby counsel. Upon court inquiry, Hogues acknowledged that the court granted his motion to proceed pro se. In response to Hogues' question as to whether he would have time to present further pretrial motions on the ensuing Friday of that same week, the day set for pretrial jury voir dire, the District Court replied that he could file them, but whether there would be time to fully consider them was "a different story." Kotter asked if he could be heard, but the court did not allow him to speak because he was there only as standby counsel. In reference to previously filed motions, the prosecutor reminded the court that Jane Doe and a MoneyGram representative would be testifying remotely via video conferencing. Hogues responded that he did not have an opportunity to object to the remote testimony of any contemplated State's witness. The District Court retorted that he in fact *did* have prior opportunity to object through then-assigned counsel (Kotter), and that the matter had already been ruled on. The court further noted that, despite having very effective assigned counsel,

11

you decided not to take advantage of your counsel, so this is your decision. You put yourself in a really, really difficult place. And I think it's one of the worst decisions I've ever seen made in a courtroom in my life; but you've made it, and you've insisted upon it despite my urging you not to do it.

Further remarking that it viewed Hogues' choice to proceed pro se as a delaying tactic, the court acknowledged that he had the right to proceed pro se, but not the right to invoke self-representation as a means to further delay trial. The court concluded by saying that it was "*convinced that*" Hogues' *choice* to proceed pro se was "*voluntary and knowing*," which is why he had "the absolute right to represent [him]self." (Emphasis added.)

¶15 On Friday June 11th, before the scheduled start of pretrial jury voir dire later that day, Hogues filed a pro se motion and incorporated "brief" seeking a literal last-minute trial continuance on the asserted grounds, *inter alia*, that:

> [He] ha[d] only recently began presiding as pro se litigant as of June 7th . . . [and] only recently receiv[ed] filed motions and recent documents pertaining to said case on final pre-trial date June 9th 2021 . . . on a disk [provided] by [former counsel (Kotter)]. Also considering that defendants counsel presented no rebuttal evidence in favor of defendant in trial. In pursuant to MCA 2019 41-5-1414), also Article 2 Section 24 *Montana Constitution right to confront* and cross exam *witness's* testifying against the party. Defendant would *ultimately need additional time to prepare for trial*. Proceeding without allowing additional time would make a fair trial impossible.

> .    .    .

> [E]rror follows from a denial of an opportunity to rebut the objectionable evidence. When it is made to appear that testimony of the witness is such that it cannot be reasonably anticipated, postponement or continuance of the hearing is available to a defendant to meet it and if application therefor is denied, prejudice being shown, reversal will follow." (Emphasis supplied). *State vs. Paulson* 538 P.2d 339 (1975). . . . Also cited . . . *State vs Edwards*, 54 N.M. 189, 217 P.2d 854, 856 "errors" follows from a denial of an opportunity to rebut the objectionable evidence when it is made to appear

that testimony of such witness is such that in cannot be reasonably anticipated, postponement or continuance of the hearing is available to a defendant to meet it and if application therefore is denied, prejudice being shown, reversal will follow (Emphasis supplied not granting continuance would be prejudice to the defendant)

.   .   .

[D]efendant observed that the court . . . did not state for what cause the unwillingness to grant defendant a continuance at Pre-Trial Conference dated April 14th 2021 3;45 pm.  Allowing the record to reflect courts only stated "I am not continuing this case".  In light of the previously unopposed continuance granted to the state obtain evidence crucial to states complaint.  Namely the uncertainty of State's witness availability.  Defendant's request is merely and only to one in that a defense and/or offense may be presented during trial.

(Original punctuation, capitalization, and grammar—emphasis added.)  Before proceeding with jury voir dire, and upon the State's continued objection, the District Court summarily denied the motion for the "same reason" earlier given at the final pretrial conference regarding the same issue.

¶16     Albeit inartfully and wholly bereft of any legal aptitude, Hogues thereafter actively participated in the jury voir dire process, made an opening statement, cross-examined State witnesses, and made several unsuccessful evidentiary objections in the State's case-in-chief.  Over Hogues' contemporaneous objection at trial, the State presented materially relevant remote testimony[3] from Jane Doe via two-way video conferencing as

---

[3] Doe's trial testimony largely tracked the information previously provided by her and Zubia under questioning from the DCI agents in 2015, and further elaborated on Zubia's involvement with Hogues in the transaction of that prostitution business.  For the first time, however, Doe testified to Hogues' surprise that she had "spoke[n] with" Hogues on a "video call," which the State acknowledged was "different than what she said in her initial interview with law enforcement."

authorized on leave of court seven months prior without objection from Hogues' prior counsel (Kotter). As he had in his prior June 11th motion after obtaining leave to proceed pro se, Hogues again objected in advance at trial that Doe's remote testimony violated his Mont. Const. art. II, § 24, right to confront adverse witnesses at trial. Unmoved by Hogues' renewed objection that he previously had no prior opportunity to object, or otherwise direct his prior counsel to object, the District Court again similarly overruled the objection on the stated ground that he had previously waived his opportunity to object through his prior counsel (Kotter), to wit:

| [Hogues] | Also pertaining to Article II, Section 24 of the Montana State Constitution, the accused's right to confront a witness face-to-face. In light of the fact that I haven't had a chance to examine the witness, I believe that it would be proper that the witness was face-to-face so that the jury and us can all . . . see and judge it correctly, Your Honor. |
|---|---|
| [Court] | All right. Thank you. Mr. Hogues, you, through your prior counsel, stipulated that this witness could testify by video. It's only been recently that you have raised this objection, and it's too late for the State to get this witness here; so I'm going to deny your objection on the grounds that it's untimely, and also on the grounds that you have previously stipulated that this witness could appear by video. |
| [Hogues] | I never—*I never stipulated*. |
| [Court] | Do not argue. |
| [Hogues] | Okay. |
| [Court] | You did through your counsel. |

(Emphasis added.) For the fourth time, Hogues again objected to Doe's remote testimony when the State called her to testify at trial, but the District Court again overruled the objection based on its prior rulings.

14

¶17 After three grueling days of struggling to represent himself at trial, Hogues had standby counsel (Kotter) deliver his closing jury argument. On notifying the District Court of that choice, Hogues acknowledged that:

> I really should have took [the court's] advice the whole time. [L]ike yeah, sometimes you got a hard lesson to learn; but *I should have took your advice this whole time*, and I see that now.

(Emphasis added.) The jury returned a "guilty" verdict on the charged offense of aggravated promotion of prostitution. The District Court later sentenced Hogues to a 15-year prison term, with three years suspended, subject to various specified terms and conditions.[4] Hogues timely appeals.

## STANDARD OF REVIEW

¶18 The validity of an accused's waiver of a fundamental federal and state constitutional fair trial right, whether the right to assistance of counsel or to confront adverse witnesses, is a mixed question of law and fact ultimately subject to review de novo for correctness. *See State v. Mercier*, 2021 MT 12, ¶¶ 11-12, 403 Mont. 34, 479 P.3d 967; *State v. Marquart*, 2020 MT 1, ¶ 16, 398 Mont. 233, 455 P.3d 460; *State v. Jones*, 2020 MT 7, ¶ 17, 398 Mont. 309, 459 P.3d 841; *State v. Stock*, 2011 MT 131, ¶¶ 16-17, 361 Mont. 1, 256 P.3d 899; *State v. Norquay*, 2011 MT 34, ¶ 13, 359 Mont. 257, 248 P.3d 817. In our discretion, we may review an unpreserved assertion of error upon an affirmative showing of error prejudicial to a fundamental constitutional right, and that failure to exercise plain

---

[4] Hogues was represented by counsel at sentencing, and here again on appeal.

error review would result in a manifest miscarriage of justice, compromise the fundamental fairness of the subject proceeding, or otherwise compromise the judicial process. *See State v. Taylor*, 2010 MT 94, ¶ 12, 356 Mont. 167, 231 P.3d 79 (common law plain error exception to contemporaneous objection/waiver rule).

¶19    1.    *Whether the District Court's summary grant of Hogues' motion to proceed pro se four days before trial was plain error?*

¶20    As applicable to the States through the Fourteenth Amendment to the United States Constitution, the Sixth Amendment expressly guarantees the criminally accused the right to assistance of legal counsel. U.S. Const. amend. VI; *Faretta v. California*, 422 U.S. 806, 818, 95 S. Ct. 2525, 2532 (1975). "The purpose of the right to counsel is to protect the integrity and fairness of the adversary criminal process." *State v. Winzenburg*, 2022 MT 242, ¶ 19, 411 Mont. 65, 521 P.3d 752 (quoting *State v. Scheffer*, 2010 MT 73, ¶ 20, 355 Mont. 523, 230 P.3d 462). More particularly, the Sixth Amendment and Mont. Const. art. II, § 24, right to counsel is a safeguard against criminal conviction resulting from an accused's "ignorance" of his or her constitutional and other fair trial rights. *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S. Ct. 1019, 1023 (1938). By necessary implication from the express right to the assistance of counsel, an accused also has the concordant fundamental Sixth Amendment right to represent him or herself without counsel. *Faretta*, 422 U.S. at 819-20, 95 S. Ct. at 2533 (noting necessary implication from structure of the express right and that "it is [the accused] who suffers the consequences if the defense fails"). Montana Constitution Article II, § 24 ("accused shall have the right to appear and defend in person and by counsel"), similarly guarantees an accused the concordant rights

16

to assistance of counsel, and to represent him or herself without counsel. The right of self-representation includes the exclusive right to: (1) control the organization, content, conduct, and presentation of the defense, if any; (2) determine whether, when, what, and how motions and arguments will be made; and (3) participate in and conduct all defense phases and aspects of trial including, *inter alia*, jury selection, witness examination, evidence presentation, and addressing the court and jury at appropriate points during trial. *State v. Bartlett*, 271 Mont. 429, 433, 898 P.2d 98, 100-01 (1995); *McKaskle v. Wiggins*, 465 U.S. 168, 174, 104 S. Ct. 944, 949 (1984).

¶21 In contrast to express or implicit waivers of *non-trial* constitutional rights which must only be voluntary and unequivocal, express fundamental constitutional *fair trial rights* (including, e.g., assistance of counsel, speedy trial, jury trial, and confrontation of adverse witnesses) are central to the fundamental Fourteenth Amendment and Mont. Const. art. II, § 17, safeguards against deprivation of liberty without due process of law, and thus may be waived only by a voluntary, unequivocal, and *knowing and intelligent* act of relinquishment, with "every reasonable presumption against waiver." *State v. Swan*, 2000 MT 246, ¶ 17, 301 Mont. 439, 10 P.3d. 102 (citing *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242 (1977)); *Schneckloth v. Bustamonte*, 412 U.S. 218, 235 and 237-38, 93 S. Ct. 2041, 2051-53 (1973); *Zerbst*, 304 U.S. at 464-65, 58 S. Ct. at 1023. *Accord Winzenburg*, ¶¶ 20 and 26 (citing *Marquart*, ¶ 28); *State v. Dethman*, 2010 MT 268, ¶ 22, 358 Mont. 384, 245 P.3d 30; *State v. Langford*, 267 Mont. 95, 99, 882 P.2d 490, 492 (1994); *State v. Colt*, 255 Mont. 399, 403-04 and 407, 843 P.2d 747, 749-50 and 752 (1992)

(citing *State v. Plouffe*, 198 Mont. 379, 385, 646 P.2d 533, 536 (1982)); *Edwards v. Arizona*, 451 U.S. 477, 482-83, 101 S. Ct. 1880, 1884 (1981). Whether an asserted waiver of a fundamental fair trial right was voluntary, unequivocal, and knowing and intelligent is a mixed question of law and fact subject to de novo review for the correct application of pertinent constitutional law to the totality of the record circumstances. *Winzenburg*, ¶ 16; *Brewer*, 430 U.S. at 403, 97 S. Ct. at 1242. *See also State v. Giffin*, 2021 MT 190, ¶ 11, 405 Mont. 78, 491 P.3d 1288; *State v. Favi*, 2005 MT 288, ¶ 10, 329 Mont. 273, 124 P.3d 164; *Edwards*, 451 U.S. at 482, 101 S. Ct. at 1884; *Zerbst*, 304 U.S. at 464, 58 S. Ct. at 1023.

¶22    As applied to the Sixth Amendment and Mont. Const. art. II, § 24, right to counsel, the "knowing and intelligent" waiver requirement requires only that the accused understand the maximum and any mandatory minimum possible punishment on conviction, and is generally "aware of the dangers and disadvantages of self-representation" in the criminal justice system. *Winzenburg*, ¶¶ 20-24 (citation omitted); *Colt*, 255 Mont. at 407, 843 P.2d at 751; *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541.[5] As a prophylactic measure to ensure that lay ignorance or misunderstanding does not nullify the fundamental due process right to counsel, a trial court must not allow an accused to proceed pro se unless and until it has affirmatively "ensure[d]" on advisory or inquiry that the accused understands the nature of

_____

[5] *See also* § 46-12-210(1)(a), MCA (before accepting guilty or nolo contendere plea "court shall determine that the defendant understands . . . the nature of the charge[,] . . . [any] mandatory minimum penalty[,] . . . [and] the maximum penalty provided by law, including the effect of any [applicable] penalty enhancement provision or special parole restriction").

18

the charge(s) at issue, the "possible" maximum and mandatory minimum penalties on conviction, and is *at least generally* aware of the "inherent" dangers/risks and disadvantages of self-representation. *Winzenburg*, ¶¶ 20-24; *Colt*, 255 Mont. at 403 and 406-07, 843 P.2d at 749 and 751; *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541.[6] Though a more detailed advisory may be more advantageous in some cases, the so-called *Faretta* inquiry or advisory neither requires the trial court to specifically apprise an accused as to any particular fact or legal defenses, mitigations, or other potential trial strategies or options available in a particular case, or to rigidly exhaust any particular formula, catalog, checklist, litany, script, or colloquy of concerns "essential to a broad understanding of the whole matter." *Winzenburg*, ¶¶ 20-24 (citing *Colt*, 255 Mont. at 406, 843 P.2d at 751; *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S. Ct. 1379, 1387 (2004); and *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541—noting our rejection of more stringent Ninth Circuit "test" specified in *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004)); *Dethman*, ¶ 23 (citations omitted). Despite reference to "intelligent" in the "knowing and intelligent" waiver requirement, the validity of a waiver of the right to counsel does not depend on whether the accused has or had sufficient knowledge, skill, or ability to effectively represent him or herself, or whether the waiver was smart, wise, or advisable. *See Colt*, 255 Mont. at 403

---

[6] *Accord* § 46-8-102, MCA (1991) ("defendant may waive the right to counsel when the court ascertains that the waiver is made knowingly, voluntarily, and intelligently"). Section 46-8-102, MCA (1991), is a recodification of the former § 46-8-102, MCA (1987), which was in turn a codification the similar Sixth Amendment and Mont. Const. art. II, § 24, right to counsel waiver discussed in *Plouffe*, 198 Mont. at 385, 646 P.2d at 536. Commission Comments to § 46-8-102, MCA (1991).

and 406-07, 843 P.2d at 749 and 751. *Accord State v. Jones*, 2020 MT 7, ¶ 22, 398 Mont. 309, 459 P.3d 841 ("[t]he competence . . . required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself"—citation omitted). At bottom, we will generally affirm a trial court decision to allow an accused to proceed pro se without counsel as long as substantial record evidence indicates that the accused made a voluntary, unequivocal, and knowing and intelligent waiver of the right to be represented by counsel. *Winzenburg*, ¶¶ 22-26 (citing *Colt*, 255 Mont. at 407, 843 P.2d at 752); *Dethman*, ¶ 23 (citing *Langford*, 267 Mont. at 99-100, 882 P.2d at 492 (citing *Colt*, 255 Mont. at 406, 843 P.2d at 751)).

¶23    Here, the record manifests that the District Court engaged in a running colloquy with Hogues in response to his continuing unsupported complaints regarding the representation provided by his public defender Kotter, and concurrently stated desire for court-appointment of a sixth successive defense counsel, as scheduled trial dates successively approached.[7]  Hogues' running complaints about Kotter then culminated in

---

[7] As we have recently summarized:

> When a defendant complains about ineffective assistance of appointed counsel and requests new counsel, a district court must make [an] adequate initial inquiry as to whether [the] allegations are "seemingly substantial."  A district court conducts "adequate initial inquiry" when it considers the defendant's factual complaints together with counsel's specific explanations and makes some sort of critical analysis of the complaint . . . [focused on] whether a conflict is so great as to result in a total lack of communication. . . .  [In such case,] [i]t is the defendant who bears the burden of proving either a total lack of communication or ineffective assistance of counsel.

*Dethman*, ¶ 16 (internal citations and punctuation omitted).  On appeal, Hogues neither challenges the adequacy of the District Court's inquiry regarding his complaints about Kotter, or its manifest record findings that Hogues failed to meet his burden of proof under this threshold standard.

his unequivocal June 7, 2021, motion through Kotter for leave to proceed pro se. In the immediate wake of the District Court's summary grant of the motion, Hogues appeared at the previously scheduled June 9th final pretrial conference, with Kotter as standby counsel, and acknowledged and proceeded under his stated unequivocal desire to proceed pro se. The record manifests that the District Court had previously fully apprised Hogues of the substantive nature of the charged offense, and his accompanying constitutional trial rights, at his initial arraignment in the presence of counsel with in-court hand-service of the State's charging Information and supporting affidavit. Hogues does not challenge on appeal the adequacy of the court's record advisory of the nature of the charge against him, possible penalties provided by law on conviction, or the nature or extent of his concomitant constitutional trial rights. Nor has he made any assertion, much less supporting record-based showing, that he was not aware, or did not understand, any aspect of those matters at the time he moved for leave of court to proceed pro se.

¶24 As to his general awareness and understanding of the dangers, risks, and disadvantages of self-representation, the District Court clearly and unambiguously advised Hogues at his April 2021 status hearing that:

> [I]f you [choose to] represent yourself, I'm going to proceed just as I would if you were represented by counsel. . . . *You need to understand* that the *rules of evidence and* the *rules of procedure apply* to pro se litigants just as they apply to counsel.

(Emphasis added.) Hogues acknowledged not only that he understood, but that in "light of the fact that" he did not "have [that] knowledge," he was then only seeking new counsel

rather than leave to proceed pro se. In commending his choice to not proceed pro se, the court further advised:

> I want to congratulate you in rethinking that. I think *in this type of case it's extremely important that you have counsel*; and *I would really discourage you from proceeding pro se in a case like this* because I think that *it would not go very well for you in front of a jury*, simply because *you don't have the training as a lawyer*. It has nothing to do with background experience or intelligence; it just has to do with *there are certain skills and knowledge* that *trial lawyers have*[,] . . . *that you don't*[,] . . . [and which appointed counsel] has.

(Emphasis added.)

¶25 Again, in commenting on Hogues' frustration with his first encounter with procedural difficulty at the ensuing June 9th final pretrial conference, the District Court chided and warned him:

> [Y]ou decided not to take advantage of your [assigned] counsel, so this is your decision. *You put yourself in a really, really difficult place.* And I think it's *one of the worst decisions I've ever seen* made in a courtroom in my life; but you've made it, and you've insisted upon it *despite my urging you not to do it*.

(Emphasis added.) Even at that late date, Hogues still had the option of reconsidering and re-activating his then-standby counsel (Kotter) to assist and represent him at the impending trial scheduled to begin with jury voir dire only two days later, but did not. Noting Hogues' apparent tactical use of the consequence of his ill-advised choice to proceed pro se as a means to leverage a last minute continuance, the District Court expressly found that it remained "convinced that" Hogues' *choice* to proceed pro se was "*voluntary and knowing.*" (Emphasis added.) Substantial record evidence clearly indicates that, though recklessly ill-advised, Hogues' decision to proceed pro se was a voluntary, knowing and intelligent,

22

unequivocal relinquishment, i.e., waiver, of his right to have the assistance of counsel. Under these circumstances, we hold that the District Court did not erroneously grant Hogues' motion to proceed pro se.[8]

¶26    2. *Whether the District Court erroneously admitted prosecution witness testimony via remote two-way video conferencing?*

¶27    As applied to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Sixth Amendment guarantees the criminally accused the right to "confront" adverse "witnesses." U.S. Const. amends. VI and XIV. The Supreme Court has long recognized that the Sixth Amendment right to "confront" adverse witnesses means the "right to *meet*" adverse witnesses "*face to face*" at trial. *Coy v. Iowa*, 487 U.S. 1012, 1019-21, 108 S. Ct. 2798, 2802-03 (1988) (noting "irreducible literal meaning" of Confrontation Clause—citation omitted); *Maryland v.*

---

[8] While Hogues does not challenge the correctness of the District Court's denial of his last-minute continuance requests at the June 9th final pretrial conference, and subsequent June 11th written motion, we note in passing our prior recognition that:

> persistent unreasonable [defendant] demand[s] for dismissal of counsel [is] the functional equivalent of a knowing and voluntary waiver of counsel. . . . Whether [existing] counsel is effective depends to a great extent upon whether the defendant cooperates with counsel. If the defendant chooses to hamstring . . . counsel through lack of cooperation, [his or her] effectiveness will, of course, be compromised accordingly. . . . [Where the defendant] refus[es] to cooperate with . . . appointed counsel . . . [in an] attempt[] to force the appointment of new counsel[,] [we] cannot countenance such dilatory and manipulative tactics at the expense of the efficient administration of justice. . . . [C]ourts must be wary [of such tactic] being used as a ploy to gain time or effect delay . . . [and thus] may deny a continuance even if it results in the defendant's being unrepresented at trial . . . [where the] effectiveness [of] counsel was compromised by [the defendant's] lack of cooperation [and was thus his] own doing.

*State v. Craig*, 274 Mont. 140, 148-49 and 152-54, 906 P.2d 683, 688 and 690-91 (1995) (internal punctuation and citations omitted).

*Craig*, 497 U.S. 836, 844, 110 S. Ct. 3157, 3162-63 (1990) (*Coy* "interpretation" derives from "literal text" of United States Constitution and "historical roots" thereof). The Montana Constitution similarly guarantees that the criminally "accused shall have the right . . . to meet [adverse] witnesses . . . face to face." Mont. Const. art. II, § 24. Despite slightly different language, the Sixth Amendment and Mont. Const. art. II, § 24, thus similarly guarantee criminal defendants the right to confront and cross-examine adverse witnesses personally, face-to-face in the courtroom. *State v. Strommen*, 2024 MT 87, ¶ 17, 416 Mont. 275, 547 P.3d 1227. The purpose of the face-to-face confrontation and cross-examination right is to "ensure the reliability of the [adverse] evidence" through "rigorous" adversarial face-to-face testing in the presence of the factfinder in accordance with the long-settled "norm of Anglo-American" justice. *Craig*, 497 U.S. at 844-46, 110 S. Ct. at 3162-63 (citing *Coy*, 487 U.S. at 1016-17, 108 S. Ct. at 2801, *inter alia*). *Accord Strommen*, ¶ 17 (citing *Craig*, *Coy*, and *Mercier*); *Mercier*, ¶ 16 (citing *Craig* and *Coy*, 487 U.S. at 1019, 108 S. Ct. at 2801 ("[i]t is always more difficult to tell a lie about a person 'to his face' than 'behind his back'"—"[e]ven if a lie is told, it will often be . . . less convincing[]" live in open court)).

¶28 The Sixth Amendment and Mont. Const. art. II, § 24, right to face-to-face confrontation and cross-examination generally applies to all "testimonial" statements offered as evidence adverse to a criminally accused at trial. *Crawford v. Washington*, 541 U.S. 36, 59 and 68-69, 124 S. Ct. 1354, 1369 and 1374 (2004). *Accord Strommen*, ¶ 18 (citing *Crawford* and *Michigan v. Bryant*, 562 U.S. 344, 357-58, 131 S. Ct. 1143, 1155

24

(2011)).  A statement is "testimonial" for purposes of the Sixth Amendment and Mont. Const. art. II, § 24, when the declarant's "primary purpose" is to establish, report, or prove relevant factual matters to aid in the "criminal prosecution" of another.  *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74 (2006) (distinguishing "nontestimonial" statements, for example, as those made for the primary purpose of "enabl[ing] police assistance to meet an ongoing emergency"); *Strommen*, ¶18 (citing *Davis*; *Ohio v. Clark*, 576 U.S. 237, 245-46 and 248-49, 135 S. Ct. 2173, 2180-82 (2015) ("primary purpose" test determines whether subject statements are "testimonial" under *Crawford*); and *Crawford*, 541 U.S. at 52-61, 124 S. Ct. at 1364-70 (noting various types of constitutionally "testimonial" statements)).[9]  The Sixth Amendment and Mont. Const. art. II, § 24, confrontation right thus bars prosecution evidence regarding "testimonial" statements made without face-to-face confrontation except upon an affirmative state showing either that (1) the declarant is "unavailable" for trial and the accused had a prior opportunity for cross-examination regarding the matter at issue, or (2) the type of out-of-court statement at issue "would have been admissible in a criminal case" without face-to-face confrontation and cross-examination "at the time" of ratification of the United States Constitution.  *Clark*, 576 U.S. at 243 and 245-46, 135 S. Ct. at 2179-80 (citing

---

[9] For example, "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Crawford*, 541 U.S. at 59 n.9, 124 S. Ct. at 1369.  *Accord Williams v. Illinois*, 567 U.S. 50, 79, 132 S. Ct. 2221, 2240 (2012) (if trial court "did not rely on the statement in question for its truth, there is simply no way around the proviso in *Crawford* that the Confrontation Clause applies only to out-of-court statements that are used to establish the truth of the matter asserted"—citing *Crawford*, 541 U.S. at 59 n.9, 124 S. Ct. at 1369, punctuation omitted).

25

*Crawford*, 541 U.S. at 56 n.6, 124 S. Ct. at 1367 (*inter alia* noting "dying declarations" as an example of Framers-era exception to common law principle embodied in Sixth Amendment));[10] *Bryant*, 562 U.S. at 357-59 and 370, 131 S. Ct. at 1155-56 and 1162 ("basic objective" of Confrontation Clause "is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial"— evidentiary hearsay rule standards "designed to identify some statements as reliable[] will be relevant" to "the primary purpose determination" but "court must [ultimately] determine . . . [declarant's] primary purpose . . . by objective[] evaluati[on] [of] the statements and actions of the parties" under the totality of the circumstances); *Crawford*, 541 U.S. at 59 and 68-69, 124 S. Ct. at 1369 and 1374 ("*Roberts* notwithstanding"[11] the only "indici[a] of reliability" of testimonial statements "sufficient to satisfy constitutional demands is . . . confrontation" as "prescribe[d]" by the Sixth Amendment); *Ohio v. Roberts*, 448 U.S. 56, 74-75, 100 S. Ct. 2531, 2543 (1980) (state burden to show declarant

---

[10] "The Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. The text of the Sixth Amendment . . . is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding. . . . [T]he common law in 1791 conditioned admissibility of an absent witness's examination on unavailability and a prior opportunity to cross-examine. The Sixth Amendment therefore incorporates those limitations." *Crawford*, 541 U.S. at 53-54, 124 S. Ct. at 1365-66.

[11] *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980) (out-of-court statements generally admissible at trial under Sixth Amendment Confrontation Clause only if government shows that declarant is "unavailable" for trial and the statements bear adequate "indicia of reliability," which may "be inferred . . . where the evidence falls within a firmly rooted hearsay exception" or "particularized guarantees of trustworthiness"—internal citation omitted), *implicitly overruled by Crawford*, 541 U.S. at 62-69, 124 S. Ct. at 1371-74.

unavailability under narrow circumstances when out-of-court statements not barred by Sixth Amendment), *implicitly overruled on other grounds by Crawford*, 541 U.S. at 62-69, 124 S. Ct. at 1371-74. *Accord Strommen*, ¶ 18 (citing *Clark*, *Crawford*, *Bryant*, and *Roberts*, *supra*).

¶29 However, the Supreme Court, and this Court applying *Craig*'s Sixth Amendment analysis under Mont. Const. art. II, § 24, have recognized a narrow "important public policy" exception to the face-to-face confrontation requirement when an accused is nonetheless afforded an opportunity to contemporaneously cross-examine the witness at trial via modern technology. *Strommen*, ¶ 19 (citing *Craig*, 497 U.S. at 844-59, 110 S. Ct. at 3162-71 (recognizing *inter alia* that "face-to-face confrontation forms the core of the values" embedded in the Confrontation Clause but "must occasionally give way to considerations of public policy and the necessities of the case"—punctuation and citations omitted)); *Mercier*, ¶¶ 15, 17-21, and 26-28 (applying *Craig* exception to two-way video conferencing under Mont. Const. art. II, § 24); *City of Missoula v. Duane*, 2015 MT 232, ¶¶ 14-16 and 20-21, 380 Mont. 290, 355 P.3d 729 (recognizing and analyzing *Craig* exception to two-way video conferencing under Mont. Const. art. II, § 24). Under the narrow *Craig* exception, the contemporaneous trial testimony of a prosecution witness is admissible via two-way video conferencing upon an affirmative case-specific prosecution showing, and corresponding trial court findings, that (1) the witness is "unavailable" for personal face-to-face cross-examination in the courtroom, and (2) denial of such personal face-to-face cross-examination is "necessary to further an important public policy" with

"the reliability of the testimony . . . otherwise assured." *Mercier*, ¶¶ 15, 17-21, and 26-28; *Duane*, ¶¶ 14-16 and 20-21; *Craig*, 497 U.S. at 847-50 and 855-59, 110 S. Ct. at 3164-66 and 3169-70. *Accord Strommen*, ¶ 19 (citing *Mercier*, *Duane*, and *Craig*).

¶30 The first element of the *Craig* exception—witness unavailability—requires a case-specific prosecution showing and corresponding court finding "that the personal presence of the witness is impossible or impracticable to secure due to" extraordinary distance, expense, or health "considerations." *Strommen*, ¶ 19 (quoting *State v. Bailey*, 2021 MT 157, ¶ 42, 404 Mont. 384, 489 P.3d 889 (quoting *Duane*, ¶ 25), and citing *State v. Walsh*, 2023 MT 33, ¶¶ 9-11, 411 Mont. 244, 525 P.3d 343); *Mercier*, ¶¶ 19-20 and 26-28 ("face-to-face confrontation . . . may be compromised . . . only upon a case-specific finding" that it is "necessary to further an important public policy"—punctuation and citation omitted). "Implicit in the required" witness unavailability showing under the first *Craig* exception element "is an affirmative showing of a *good-faith* prosecutorial *effort* to obtain the witness's presence at trial." *Strommen*, ¶ 19 (citing *Roberts*, 448 U.S. at 74-75, 100 S. Ct. at 2543 (unavailability requirement for Sixth Amendment confrontation exception); *Barber v. Page*, 390 U.S. 719, 724-25, 88 S. Ct. 1318, 1322 (1968); *Norquay*, ¶¶ 21-22 (citing *State v. Hart*, 2009 MT 268, ¶ 24, 352 Mont. 92, 214 P.3d 1273 (noting similar implicit requirement of M. R. Evid. 804(a) and citing *Barber*)); and *Crawford*, 541 U.S. at 57, 124 S. Ct. at 1367-68 (citing *Barber*)—punctuation omitted but emphasis original). "The good-faith effort requirement does not require the State to make a futile effort, such as when a witness has died, but may require affirmative measures when there

28

is a reasonable possibility, however remote, that such effort might secure the declarant's personal presence for trial." *Strommen*, ¶ 19 (citing *Roberts*, 448 U.S. at 74-75, 100 S. Ct. at 2543—punctuation omitted). "The lengths to which the prosecution must go is a question of [objective] reasonableness under the circumstances." *Strommen*, ¶ 19 (citing *Roberts*, 448 U.S. at 74-75, 100 S. Ct. at 2543—punctuation omitted). "The ultimate question is . . . whether the prosecution has affirmatively shown that the witness is unavailable to personally testify at trial upon reasonable good-faith efforts undertaken prior to trial." *Strommen*, ¶ 19 (citing *Roberts*, 448 U.S. at 74-75, 100 S. Ct. at 2543— punctuation omitted).

¶31    "Under the second *Craig* exception element, mere judicial economy or a generalized assertion, showing, or finding of significant travel burden or logistical expense or inconvenience is generally insufficient alone to constitute an important public policy justification for dispensing with" constitutionally required "actual face-to-face confrontation." *Strommen*, ¶ 20 (citing *Mercier*, ¶¶ 26-28; *State v. Martell*, 2021 MT 318, ¶ 12, 406 Mont. 488, 500 P.3d 1233 (citing *Mercier* and *Bailey*)); *Bailey*, ¶ 42 (showing that witness not reasonably available for trial "does not obviate" prosecutorial burden to further show "that dispensing with" personal in-court confrontation and cross-examination is "necessary to further an important public policy"). "Even then, the second *Craig* exception element still requires [all other] hallmarks of [the] confrontation [right]" including that:

> (1)    the witness must be under oath and understand the seriousness of his or her testimony;

29

(2)	the witness must be subject to cross-examination; and

(3)	the remote audio-video technology platform must be of sufficient means and quality to allow meaningful assessment of the witness's veracity by the factfinder.

*Strommen*, ¶ 20 (citing *Mercier*, ¶¶ 17 and 21 (citing *Duane*, ¶ 15; *Craig*, 497 U.S. at 857, 110 S. Ct. at 3170; *inter alia*); and *Crawford*, 541 U.S. at 59 and 68-69, 124 S. Ct. at 1369 and 1374 (the only "indici[a] of reliability" of testimonial statements "sufficient to satisfy constitutional demands is" confrontation as "prescribed" by the Sixth Amendment)—punctuation omitted).

¶32	We have carefully guarded the Sixth Amendment and Mont. Const. art. II, § 24, rights of an accused to personal, physical face-to-face confrontation at trial by holding the State and trial courts to their respective burdens under the *Craig* exception. *See Walsh*, ¶¶ 5 and 9-11 (affirming allowance of remote video testimony of prosecution expert on "substantive[] detailed findings about the health and logistical challenges involved in attempting to bring" the witness "from Greece" due to 11,000-mile trip, 30-hour flight time, "significant time in airports . . . for multiple layovers," logistical difficulties imposed by Covid-19 pandemic protocols, and heightened *case-specific* risk of Covid-19 contraction and spreading health risks to witness, court personnel, and other witnesses posed by disregard of national warnings to avoid air travel to and from Greece); *Duane*, ¶¶ 6, 21, and 25 (affirming allowance of remote video testimony of prosecution expert upon "compelling showing" and court finding that "extraordinary [city] expense" and "significant [witness] burden" made bringing veterinarian witness from California for

30

"three separate [misdemeanor] trials" regarding the same subject matter "impossible or impracticable"). *See also Mercier*, ¶ 20 (emphasizing unique factual circumstances at issue in *Duane*).

¶33     In contrast, we have thus rejected lesser showings, assertions, and findings in order to protect the fundamental Montana and U.S. constitutional right to personal face-to-face courtroom cross-examination from diminution in the face of ever-advancing video conferencing technology.  *See, e.g., Strommen*, ¶¶ 22-28 (reversing upon admittance of remote video testimony of retained child sex assault behavioral expert where State failed to make "case-specific showing," and court failed to make "case-specific finding, that it would have been impossible or reasonably impracticable" for State "to secure" subject witness for personal in-court testimony at trial—State "tactical witness order preference," court witness convenience accommodation, and "only generalized" State and court reference to "Covid-19 concerns" insufficient); *Martell*, ¶¶ 3, 13, 15, and 27 (State assertion that requiring witness to travel from Washington for "only a few minutes [of] testimony" would be "overly burdensome" and "unnecessarily expensive" insufficient to justify non-harmless denial of defendant's right to face-to-face confrontation); *Bailey*, ¶¶ 11, 43-45, and 49 (allowance of remote video testimony of State Crime Lab toxicologist not harmless error where only asserted justification was that "requiring" full-day "travel [to and] from Missoula to Helena for brief testimony would be impracticable due to distance, expense, and timing"—"vague and unverified claims of the burden" imposed upon state or witness insufficient for denial of defendant's right to physical face-to-face

confrontation at trial); *Mercier*, ¶¶ 6, 19-20, and 26-28 (rejecting State assertion that "pursuant to the public policy of judicial economy[] it was unreasonable to incur significant travel expenses and inconveniences" of requiring federal agent to travel from Colorado for what the State "deemed" as "purely foundational" testimony regarding his forensic cell phone data extraction analysis and report findings).

¶34    Here, immediately upon obtaining leave to proceed pro se, Hogues repeatedly objected in advance, on four separate occasions,[12] that the State's presentation of Jane Doe's trial testimony via remote video conferencing would violate his fundamental right to face-to-face in-court confrontation and cross-examination.  On each occasion, the District Court summarily overruled the objections on the stated ground that Hogues had previously "stipulated" to the remote testimony through his prior counsel seven months earlier, and that it was thus "too late."  For its part, the State never made any assertion, much less showing, that it would be impossible, or impracticable due to extraordinary case-specific distance, expense, or health considerations, to secure Jane Doe's presence at trial.  Nor did the State make any assertion, much less showing, that Jane Doe's remote testimony was necessary or desirable to prevent or minimize the risk of Covid-19 exposure to anyone.  The State cursorily asserted only that Doe's remote testimony was necessary because she lived in New Mexico, had an infant child, and pandemic-related travel

---

[12] Hogues objected to remote prosecution witness testimony at the record June 9th final pretrial conference, in his written motion for a continuance filed earlier in the day before the start of preliminary jury voir dire, and twice in advance at trial.

concerns would make securing her personal presence at the then-scheduled January 2021 trial "burdensome." Even then, the State asserted this cursory justification in November 2020, seven months before the June 2021 trial at issue. The State made no assertion, much less supporting showing, of any attempt to secure Doe's personal presence at trial.[13]

¶35 In turn, the District Court made no assertion, finding, or even reference to whether the State had made any reasonable effort to secure Doe's personal presence for either of the scheduled 2021 trial dates, or that she would otherwise be unavailable for trial for any reason. Falling even shorter than the unsupported Covid-19 public health justification cursorily asserted and found insufficient in *Strommen*, there is no record indication that the court viewed, much less found, that the risk to anyone of Covid-19 exposure justified dispensing with Hogues' fundamental right to face-to-face confrontation of Jane Doe at trial, whether in January or June 2021. The State's cursory assertion that having Jane Doe travel to Montana for trial would have been "burdensome" because she lived in New Mexico, had an infant child, and due to unspecified "pandemic" concerns neither explained the nature, extent, or duration of the asserted burden, much less who would be so burdened. Nor is there any record indication that the State asserted, or the District Court found, that dispensing with Hogues' face-to-face confrontation right was necessitated by any other

---

[13] In its May 2021 motion to have her certified as a material witness, the State claimed that it had been unable to contact Doe since the hospitalization of her child in April 2021, despite her previously "consistently maintain[ing] contact with the State." However, the State did not request she be taken into custody at that time, based on belief that once contacted, she would be cooperative.

important public policy justification or extraordinary need of the case. The record here is thus devoid of any factual basis sufficient to satisfy either element of the narrow *Craig* exception to the Sixth Amendment and Mont. Const. art. II, § 24, face-to-face confrontation guarantee.

¶36 In essence and effect, the District Court overruled Hogues' objections to Jane Doe's remote trial testimony on the sole asserted ground that he previously waived his right to face-to-face confrontation by previously "stipulat[ing]" to the State's motion through his prior appointed counsel. As a preliminary matter, and without putting too fine of an edge on it, the unsupported cursory assertion *of the State* that *defense counsel "does not object"* is hardly an affirmative "stipulation," even without consideration that the subject matter involves relinquishment of a defendant's fundamental constitutional fair trial right. Even if, *arguendo*, the passive failure of defense counsel to object could reasonably be construed as an affirmative "stipulation," the fundamental constitutional right to personal face-to-face courtroom confrontation and cross-examination of an adverse prosecution witness is exclusively personal to the accused. *See Faretta*, 422 U.S. at 819-20 and 834, 95 S. Ct. at 2533 and 2540-41 (Sixth Amendment rights are "grant[ed] to the accused personally" because "[i]t is the accused, not counsel, . . . who must be confronted with the witnesses against him," and "[t]he defendant, . . . not his lawyer or the [s]tate, [who] will bear the personal consequences of a conviction"—punctuation omitted).

¶37 Moreover, an accused's express Sixth Amendment and Mont. Const. art. II, § 24, right to face-to-face courtroom confrontation of adverse witnesses, like the right to counsel

34

and jury trial, *inter alia*, is a fundamental constitutional fair trial right, central to the fundamental Fourteenth Amendment and Mont. Const. art. II, § 17, protection against deprivation of liberty without due process of law. *Schneckloth*, 412 U.S. at 235 and 237-38, 93 S. Ct. at 2051-53. As such, the fundamental right to face-to-face confrontation, like other fundamental Sixth Amendment and Mont. Const. art. II, § 24, fair trial rights, may be waived only by a voluntary, unequivocal, and *knowing and intelligent* act of relinquishment, with every reasonable presumption against waiver. *Schneckloth*, 412 U.S. at 235 and 237-38, 93 S. Ct. at 2051-53; *Zerbst*, 304 U.S. at 464-65, 58 S. Ct. at 1023. *See Winzenburg*, ¶¶ 20 and 26 (citing *Marquart*, ¶ 28); *City of Kalispell v. Salsgiver*, 2019 MT 126, ¶ 18, 396 Mont. 57, 443 P.3d 504; *Dethman*, ¶ 22; *State v. Walker*, 2008 MT 244, ¶ 18, 344 Mont. 477, 188 P.3d 1069; *Swan*, ¶ 17 (citing *Brewer*, 430 U.S. at 404, 97 S. Ct. at 1242); *Langford*, 267 Mont. at 99, 882 P.2d at 492; *Colt*, 255 Mont. at 403-04 and 406, 843 P.2d at 749-50 and 751 (citing *Plouffe*, 198 Mont. at 385, 646 P.2d at 536); *State v. Lucero*, 151 Mont. 531, 538, 445 P.2d 731, 735 (1968), *abrogated in part on other grounds by State v. Reavley*, 2003 MT 298, 318 Mont. 150, 79 P.3d 270; *Edwards*, 451 U.S. at 482-83, 101 S. Ct. at 1884.

¶38     While the question of whether an asserted waiver or relinquishment of an express Sixth Amendment and Mont. Const. art. II, § 24, fair trial right was voluntary, unequivocal, and knowing and intelligent depends on the particular facts and circumstances of each case, the record here is wholly devoid of any such personal relinquishment by Hogues of his fundamental right to face-to-face courtroom confrontation of Jane Doe. The asserted

35

relinquishment of Hogues' confrontation right is based only on the *State's* unsupported motion assertion that *defense counsel did not object*, and his subsequent passive failure to object. The District Court had no other basis upon which to find or conclude that Hogues voluntarily, unequivocally, and knowingly and intelligently consented to relinquishment of his fundamental confrontation right—it simply assumed so from those bare facts. By jurisprudential rule and practice, the courts of this state generally do not allow, and thus ignore, motions and objections asserted by criminal defendants who are represented by counsel of record.[14] When Hogues made his pro se assertion to the District Court at the June 9th final pretrial conference that he had no prior opportunity to object to the remote testimony of State's witnesses, the court had already denied former counsel Kotter's request to be heard because he was then present only as standby counsel. However, the District Court had earlier granted *Gillham* protection to Kotter regarding Hogues' earlier allegations of ineffective assistance of counsel.[15] Kotter thus could have readily disputed or confirmed Hogues' assertion had the court inquired, but it did not.

---

[14] *See State v. Samples*, 2005 MT 210, ¶ 15, 328 Mont. 242, 119 P.3d 1191 ("a district court may refuse to accept *pro se* motions from defendants who are adequately represented by counsel"); *State v. Weaver*, 2001 MT 115, ¶ 24, 305 Mont. 315, 28 P.3d 451 ("it is not error for a district court to refuse pro se motions from defendants who are represented by counsel").

[15] A so-called *Gillham* order or protection refers to court authorization of criminal defense counsel to respond to defendant allegations of ineffective assistance of counsel, including disclosure of otherwise privileged attorney-client communications, as necessary to allow the court to "ascertain the truth of such allegations" when necessary to the adjudication of such matters. *In re Gillham*, 216 Mont. at 280-82, 704 P.2d at 1020-21 (*inter alia* noting that defendants "open[] the gate" to such attorney disclosure upon allegations of ineffective assistance of counsel).

36

¶39 Perhaps we would have been faced with a closer call had the District Court relied on a filed written stipulation, or affirmative notice of no objection, co-signed by Hogues and counsel, and which either bore some manifestation or certification of an unequivocal knowing and voluntary waiver by Hogues, or might have served as a record basis upon which such affirmative waiver might reasonably have been inferred on advice of counsel. However, the State afforded the court no such aid here. Nor did the State, or the court, ask Hogues for record personal confirmation at any of the multiple record status hearings that occurred after November 2020 as to whether he in fact had no objection to Jane Doe's remote testimony in the wake of his counsel's failure to object. Finally, neither the District Court or State cited any authority for the proposition that an accused may not personally repudiate or rescind an asserted non-record passive waiver by silence of a personal fundamental fair trial right based on the inaction of defense counsel.[16] Under the particular record circumstances of this case, we hold that the District Court had no non-speculative record basis upon which to find or conclude that Hogues unequivocally, voluntarily, and knowingly and intelligently waived his fundamental Sixth Amendment and Mont. Const. art. II, § 24, right to face-to-face in-court confrontation of Jane Doe at trial.[17]

---

[16] *Compare* Kenneth W. Simons, *Rescinding a Waiver of a Constitutional Right*, 68 Geo. L. J. 919, 923 (1980) (essence of question of whether defendant has the pretrial "right to revoke a waiver" of a trial right is "whether the state has a sufficient interest in preventing the defendant from reasserting his rights").

[17] Our holding and analysis is limited to the particular and peculiar facts and circumstances at issue in this case. It thus cannot and should not be read or interpreted to expressly or implicitly hold, or even suggest, that a valid waiver of an accused's right to face-to-face confrontation of adverse witnesses necessarily requires an affirmative *Faretta*-type inquiry, an issue not before us today and in regard to which we have no express or implied opinion or comment here.

¶40 Under our harmless error standards recognized in *State v. Van Kirk*, 2001 MT 184, ¶¶ 38-39 and 46-47, 306 Mont. 215, 32 P.3d 735, we have typically viewed the erroneous denial or infringement of the Sixth Amendment and Mont. Const. art. II, § 24, right to face-to-face cross-examination of adverse witnesses as non-structural trial error, and thus subject to comparative analysis with other untainted trial evidence as to whether there is nonetheless no reasonable probability that the tainted evidence prejudicially affected the trial outcome. *See Strommen*, ¶ 29 (citing *Mercier*, ¶ 31; *Bailey*, ¶ 46; *Martell*, ¶ 17; and *Coy*, 487 U.S. at 1021-22, 108 S. Ct. at 2803). Here, however, the State's successful motion for District Court certification of Jane Doe as a "material witness" to the State of New Mexico, and the exclusive and precise nature and scope of her trial testimony as the alleged victim in this case, squarely belies and precludes any State assertion or conclusion that the erroneous denial of Hogues' fundamental right to personal face-to-face confrontation of Jane Doe at trial was harmless under our demanding *Van Kirk* harmless error standard and the particular record facts and circumstances at issue here.

## CONCLUSION

¶41 Under the particular record facts and circumstances of this case, we hold that the District Court did not erroneously grant Hogues' motion to proceed pro se without counsel. We further hold, however, that the denial of Hogues' fundamental Sixth Amendment and Mont. Const. art. II, § 24, right to personal face-to-face confrontation of Jane Doe at trial was nonetheless reversible error. Hogues' June 2021 conviction on the offense of felony

promotion of prostitution is hereby reversed and remanded for new trial. Affirmed in part, reversed in part, and remanded for further proceedings.

/S/ DIRK M. SANDEFUR

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON

Justice Beth Baker, concurring in part and dissenting in part.

¶42 I concur with the Court's ruling on Hogues's first claimed error. I disagree with its decision to reverse the conviction for admission of Jane Doe's testimony by remote appearance. In my view, the District Court's refusal on the eve of trial to allow Hogues to withdraw his attorney's prior agreement to the remote testimony was a matter of trial administration within the court's discretion.

¶43 First, I take no issue with the Court's analysis and conclusion that, under controlling precedent—particularly, cases we decided after Hogues's trial—the State did not present adequate grounds to justify an exception to the requirement for the witness's personal presence in the courtroom. *See Mercier*, ¶¶ 26-28; *Strommen*, ¶ 20; *Martell*, ¶ 12. Even if these standards had been in place at the time the State made the motion for remote appearance, however, there was no need for it to demonstrate the narrow "important public policy" exception because defense counsel agreed with the State's request. As Hogues had

full representation by counsel when that motion was filed, he was bound by counsel's agreement.

> A party may appear in person or by an attorney; but, when he appears by attorney, the latter while acting as such has control and management of the case, and his sayings and doings in the presence of the court concerning the trial of the cause are the same as though said and done by the party himself.

*Kohne v. Yost*, 250 Mont. 109, 112, 818 P.2d 360, 361-62 (1991) (quoting *State ex rel. Eden v. Dist. Ct.*, 109 Mont. 263, 268, 95 P.2d 447, 449 (1939)); *see also Stevens v. Novartis Pharms. Corp.*, 2010 MT 282, ¶ 83, 358 Mont. 474, 247 P.3d 244 (recognizing that "in Montana, parties are responsible for all statements made by their attorneys within the scope of representation, whether made in pleadings or in open court"); § 37-61-401(1)(a), MCA (an attorney has the authority to "bind . . . [his or her] client in any steps of an action or proceeding by agreement filed with the clerk or entered upon the minutes of the court"). Hogues does not contend on appeal that he was not so bound but argues that when he later attempted to reassert his confrontation rights, the District Court erred by relying on the prior waiver.

¶44 Upholding the District Court's decision to allow Hogues to represent himself, the Court notes Hogues's "apparent tactical use" of his choice to proceed pro se as a means to leverage a last-minute continuance. Opinion, ¶ 25. The trial court's refusal to compel a last-minute effort to secure Jane Doe's presence at trial was grounded in the same concern. By the time the case came to trial, the charges had been pending for more than five years. Hogues had requested four continuances of trial and absconded for over two years. Hogues repeatedly substituted his counsel, contributing to the delay. And the prosecutors assigned

40

to the case changed multiple times. The State had some difficulty maintaining contact with Jane Doe and even lost touch with her at one point.

¶45    "[D]istrict courts have broad discretion in matters of trial administration; we review their decisions regarding trial administration for abuse of discretion." *Estate of Frazier v. Miller*, 2021 MT 85, ¶ 12, 404 Mont. 1, 484 P.3d 912 (citing *Jarvenpaa v. Glacier Elec. Coop.*, 1998 MT 306, ¶ 12, 292 Mont. 118, 970 P.2d 84) (internal quotations omitted). Because Hogues initially waived his confrontation right through counsel and did not challenge it until a few days before trial, I would conclude that the District Court did not abuse its discretion when it refused Hogues's last-minute attempt to withdraw that waiver.

¶46    I would affirm the conviction and judgment.


/S/ BETH BAKER


Chief Justice Mike McGrath and Justice Jim Rice join in the concurring and dissenting Opinion of Justice Beth Baker.


/S/ MIKE McGRATH
/S/ JIM RICE